Argued December 3, 1915, affirmed February 8, rehearing denied February 29, 1916.

# STATE v. WARE.*

(154 Pac. 905; 155 Pac. 364.)

**Constitutional Law—Privileges and Immunities—Usury Law—Power of State.**

1. Laws of 1913, Chapter 278, regulating the business of loaning money or credit by persons other than national banks, licensed bankers, etc., requiring a license from the state banking board to engage in such business, and providing that no license shall be granted to any person not a *bona fide* resident of the State of Oregon, or to a corporation, etc., until such corporation, etc., appoints a resident agent to accept service, does not violate Article IV, Section 2, of the Constitution of the United States, providing that the citizens of each state shall be entitled to all privileges and immunities of citizens in the several states, or Section 1 of the Fourteenth Amendment of the United States Constitution, declaring that no state shall make or enforce any law abridging the privileges or immunities of citizens of the United States, as the state in the exercise of its police power and for the protection of small borrowers may regulate the taking of excessive interest and confine the privilege to residents and those subject to its process.

**Constitutional Law—Licenses—Class Legislation—Loan Business.**

2. Laws of 1913, Chapter 278, making it unlawful to engage in the business of making loans at more than 10 per cent without first securing a license from the state banking board, and providing by Section 2 that nothing therein should apply to the legitimate business of state and national banks, licensed bankers, trust companies, savings banks, building and loan associations, or real estate brokers, was not unconstitutional as discriminatory class legislation, as the classification need not be scientific or logically appropriate, and, if uniform within the class, and not arbitrary, is within the legislative discretion.

[As to class legislation, see note in 43 Am. St. Rep. 236.]

**Criminal Law—Evidence Obtained by Search.**

3. In a criminal prosecution for violation of the statute making it unlawful to engage in the business of making loans at more than 10 per cent without having first obtained a license from the state banking board, certain papers and correspondence seized by the officers in defendant's rooms were admissible.

**Criminal Law—Repeal and Re-enactment of Statute—Effect.**

4. Defendant was indicted, tried, convicted and sentenced for a violation of Laws of 1913, Chapter 278, making it an offense to engage in the business of making loans at more than 10 per cent without having first obtained a license from the state banking board, and

---

*For cases discussing the admissibility against defendant of documents or articles taken from him by illegal search, see note in L. R. A. 1915B, 834.                                                REPORTER.

thereafter, and while his appeal was pending, the legislature passed Laws of 1915, Chapter 219, expressly repealing chapter 278, and re-enacting substantially the same provisions, but increasing the amount of the annual license fee from $50 to $100. *Held* that the repeal and re-enactment did not necessitate the dismissal of the indictment and the discharge of the defendant, as every element of the law which he was charged with violating remained the law, and had never at any time since its first enactment ceased to be the law.

### Statutes—Title—Constitutional Provisions.

5. Laws of 1913, Chapter 278, entitled an act "to regulate the business of loaning money or credit by persons, firms and corporations other than national banks, licensed bankers, trust companies," etc., naturally and logically connected the state banking board and the state examiner with the administration of such law, and its provision for the issuance of a license by the state banking board, etc., was therefore germane to its title.

### Searches and Seizures — Evidence — Impounding Papers — Power of Court.

6. A Circuit Court has the right to make an order impounding defendant's papers seized at his place of business by officers from the district attorney's office at the time of defendant's arrest.

### Searches and Seizures—Illegal Seizure of Papers by Officers.

7. A defendant in a criminal prosecution who suffers injury by the illegal seizure of his papers at his place of business at the time of his arrest has a civil remedy.

### Criminal Law—Trial—Inquiry into the Mode of Obtaining Evidence.

8. Courts will not pause in the orderly trial of a criminal cause to inquire into the manner in which evidence, such as defendant's private papers seized at his place of business at the time of his arrest, was secured.

### Searches and Seizures—Return of Private Papers to Defendant.

9. The private papers of defendant in a criminal cause, seized by officers and used as evidence, will be returned to him upon proper application to the clerk of the Supreme Court.

From Multnomah: HENRY E. McGINN, Judge.

In Banc.    Statement by MR. JUSTICE BENSON.

The defendant, E. E. Ware, was convicted of violating the provisions of Chapter 278 of the Laws of 1913. The charging part of the indictment reads as follows:

"The said E. E. Ware, J. J. Wiesen, O. O. Grovier and J. Richards, on the 14th day of July, A. D. 1914, in the county of Multnomah and State of Oregon, then and there being, did then and there unlawfully, knowingly and willfully engage in the business of making

loans of money and of personal credit upon which the said defendants did then and there directly and indirectly charge and receive interest, discount and consideration greater than 10 per cent per annum without having first and theretofore obtained and procured license from the state banking board of the State of Oregon authorizing and permitting the said defendants to engage in the said business."

The defendant Ware was the only one arrested and tried. A demurrer to the indictment, for the reason that the facts therein stated do not constitute a crime, was overruled, and from the judgment of conviction the defendant Ware appeals.

AFFIRMED. REHEARING DENIED.

For appellant there was a brief and an oral argument by *Mr. G. E. Hamaker.*

There was a brief submitted over the names of *Mr. Martin L. Pipes* and *Mr. George A. Pipes, amicus curiae,* with an oral argument by *Mr. Martin L. Pipes.*

For the state there was a brief over the names of *Mr. George Mowry,* Deputy District Attorney, *Mr. Walter H. Evans,* District Attorney, *Mr. John A. Collier,* Deputy District Attorney, and *Mr. George M. Brown,* Attorney General, with an oral argument by *Mr. Mowry.*

MR. JUSTICE BENSON delivered the opinion of the court.

1. The assignments of error are numerous; the first, third, seventh and ninth being chiefly directed to the contention that the act under which the prosecution is maintained is unconstitutional and void. This contention is first raised in the demurrer to the indictment.

79 Or.—24

The statute in controversy contains, *inter alia,* the following clause:

"No license shall be granted to any such person, firm or voluntary association unless said person and the members of any such firm or voluntary association shall be *bona fide* residents of the State of Oregon, and no license shall be issued to any joint stock company, incorporated society, or corporation unless and until such company, society or corporation shall, in writing and in due form, to be first approved by and filed with the state banking board, appoint an agent, resident in the State of Oregon, upon whom all judicial and other process of legal notice directed to such company, society or corporation may be served."

The question arises: Does this provision violate the spirit of Article IV, Section 2, of the Constitution of the United States, wherein it is provided that "The citizens of each state shall be entitled to all privileges and immunities of citizens in the several states" or of Section 1, Fourteenth Amendment, of the same document, wherein it declares that:

"No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States."

Usury has been looked upon with disfavor for ages, and it has been uniformly held that the state may either regulate or absolutely prohibit the taking of usurious interest. It follows that no citizen has an inherent or common right to exact the same. This being true, the state has ample power to regulate the taking of excessive interest and confine the privilege to those whose residence within its borders renders them subject to its process: *State* v. *Catholic,* 75 Or. 367 (147 Pac. 372); *White* v. *Holman,* 44 Or. 180 (74 Pac. 933, 1 Ann. Cas. 843); *Sandys* v. *Williams,* 46 Or. 327 (80 Pac. 642). It is a fact of common knowledge that in the larger

cities and towns there are men whose business it is to prey upon the necessities of the improvident and the unfortunate by lending money at exorbitant rates of interest, with the effect that in many instances the borrower becomes the bond slave of the lender, if, indeed, he possesses enough character to prevent his desperation from driving him into overt acts of crime. These lendings and borrowings are usually so small in amount that the banking institutions make no pretense of engaging in the business, and hence arises the duty of the state to protect the unfortunate victim of rapacity so far as it is practicable. It requires no argument to establish the truth that this is a proper exercise of the police power. The state owes a duty in this regard just as clearly as it does to protect the ignorant and the unwary from the machination of the confidence man or the extortion of the highwayman, and if the lender under such circumstances is a nonresident of the state, he may work through devious methods to accomplish his purpose and laugh at the statutory efforts of law enforcement. We conclude that the statute under consideration is not subject to the objection suggested.

2. We next consider the question as to whether or not the act is unconstitutional as being discriminatory class legislation. Section 8 thereof reads as follows:

"That nothing contained in this act shall be held to apply to the legitimate business of state and national banks, licensed bankers, trust companies, savings banks, building and loan associations, or real estate brokers."

Speaking of a somewhat similar statute, the United States Supreme Court, speaking by Mr. Justice McKENNA, says:

"This contention attacks Section 6 of the statute which exempts from its provisions certain banks,

banking institutions and loan companies.  It is urged
that the provision is discriminatory and therefore
denies to plaintiff the equal protection of the laws.
We have declared so often the wide range of discretion
which the legislature possesses in classifying the ob-
jects of its legislation that we may be excused from
a citation of the cases.  We shall only repeat that the
classification need not be scientific nor logically appro-
priate, and if not palpably arbitrary and is uniform
within the class, it is within such discretion.  The legis-
lation under review was directed at certain evils which
had arisen, and the legislature, considering them and
from whence they arose, might have thought or dis-
cerned that they could not or would not arise from a
greater freedom to the institutions mentioned than to
individuals.  This was the view that the Supreme
Judicial Court took, and, we think, rightly took.  The
court said that the legislature might have decided that
the dangers which the statute was intended to prevent
would not exist in any considerable degree in loans
made by institutions which were under the supervision
of bank commissioners, and 'believed rightly that the
business done by them would not need regulation in
the interest of employees or employers.' * * But even
if some degree of evil which the statute was intended
to prevent could be ascribed to loans made by the ex-
empted institutions, their exception would not make
the law unconstitutional.  Legislation may recognize
degrees of evil without being arbitrary, unreasonable,
or in conflict with the equal protection provision of the
Fourteenth Amendment to the Constitution of the
United States'': *Mutual Loan Co.* v. *Martell,* 222 U. S.
225, 235 (56 L. Ed. 175, Ann. Cas. 1913B, 529, 32 Sup.
Ct. Rep. 74, 75).

We regard this quotation from the highest court of
our country as a wise and correct declaration of the
true doctrine of interpretation.

3. We come, then, to a consideration of defendant's
contention that the court erred in admitting in evidence
certain papers and correspondence which he claims

were seized by the officers in his rooms, in violation of
the constitutional guaranties against unreasonable
searches. Whatever may be the rule in the federal
courts, it has been repeatedly held in state courts that
evidence thus obtained is not thereby rendered inad-
missible: *State* v. *McDaniel,* 39 Or. 161 (65 Pac. 520) ;
*State* v. *Wilkins,* 72 Or. 77 (142 Pac. 589) ; 1 Bishop
New Cr. Proc., § 211. In 1 Greenleaf, Ev., Section 254,
the rule is stated thus :

"It may be mentioned in this place, that though
papers and other subjects of evidence may have been
illegally taken from the possession of the party against
whom they are offered, or otherwise unlawfully ob-
tained, this is no valid objection to their admissibility
if they are pertinent to the issue. The court will not
take notice how they were obtained, whether lawfully
or unlawfully, nor will it form an issue to determine
that question."

It is further complained that the court erred in per-
mitting a cross-examination of the defendant upon
matters upon which he was not questioned in his direct
examination. We have examined the record very
carefully, and while it is long and it is not necessary
to set it out herein, we may say that we find the cross-
examination of the defendant confined to matters ger-
mane to his direct testimony, and therefore proper.

4. This brings us to a consideration of a question
which was raised for the first time in the argument of
the case in this court. The indictment, as has already
been noted, was based upon Chapter 278 of the Session
Laws of 1913, and the trial, conviction and sentence
were all accomplished while that act was in force.
Thereafter, and while the appeal herein was pending,
the legislative assembly of 1915 passed a new statute,
Chapter 219 of the Session Laws of 1915, which ex-
pressly repeals Chapter 278 of the Laws of 1913. The

later act, like the former, begins with the following words:

"That hereafter it shall be unlawful to engage in the business of making loans of money or of personal credit upon which there is, directly or indirectly, charged or received, interest, discount, or consideration greater than 10 per cent per annum, without first procuring a license as hereinafter provided."

The requirements as provided are identical in both laws, with the exception that in the earlier act, the annual license fee is $50, while in the later one it is increased to $100. The only other changes in the later act are directed to additional details as to the conduct of such business after a license has been procured. Both laws require the application for a license to be made to the state banking board and give such board power to reject such application upon proper notice and a public hearing "before issuing such license," so we are not left in doubt as to the authority which is to issue the same. In brief, as has already been observed, there is, up to the point of securing the license, absolutely no change in the later act, other than an increase in the amount of the annual fee to be paid by the applicant, and, therefore, since the defendant never paid any fee nor secured any license, there is practically no change in the law so far as it affects this case. We are then to consider whether or not the repeal of the earlier act and simultaneous re-enactment of substantially the same provisions necessitates the dismissal of the indictment and discharge of the defendant. We are unable to find any good, practical reason for such a contention, since every element of the law with which the defendant is charged of violating, is still the law and has never at any moment since its first enactment in 1913 ceased to be the law. The only justification, then, for so holding must be found in

precedent. In the case of *Steamship Co.* v. *Joliffe,* 69
U. S. (2 Wall.) 450 (17 L. Ed. 805), we find the follow-
ing language:

"The new act re-enacts substantially all the provi-
sions of the original act, relating to pilots and pilot
regulations for the harbor of San Francisco. It sub-
jects the pilots to similar examinations; it requires
like qualifications; it prescribes nearly the same fees
for similar services; and it allows half pilotage fees
under the same circumstances as provided in the
original act. It appears to have been passed for the
purpose of embracing within its provisions the ports
of Mare Island and Benicia, as well as the port of San
Francisco; of creating a board of pilot examiners for
the three ports, in place of the board of pilot commis-
sioners for the port of San Francisco alone, and of
prohibiting the issue of licenses to any persons who
were disloyal to the government of the United States.
The new act took effect simultaneously with the repeal
of the first act; its provisions may, therefore, more
properly be said to be substituted in the place of, and
to continue in force with modifications, the provisions
of the original act, rather than to have abrogated and
annulled them. The observation of Mr. Chief Justice
SHAW, in *Wright* v. *Oakley,* 5 Met. (Mass.), 406, upon
the construction of the Revised Statutes of Massa-
chusetts, which in terms repealed the previous legis-
lation of the state, may with propriety be applied to
the case at bar. 'In construing the Revised Statutes
and the connected acts of amendment and repeal, it
is necessary to observe great caution to avoid giving
an effect to these acts which was never contemplated
by the legislature. In terms, the whole body of the
statute law was repealed; but these repeals went into
operation simultaneously with the Revised Statutes,
which were substituted for them, and were intended
to replace them, with such modifications as were in-
tended to be made by that revision. There was no
moment in which the repealing act stood in force with-
out being replaced by the corresponding provisions of
the Revised Statutes. In practical operation and

effect, therefore, they are rather to be considered as a continuance and modification of old laws than as an abrogation of those old and the re-enactment of new ones.' "

The good practical sense of the above quotations seems to render further citation of authorities unnecessary, for both of the cited cases seem to be precisely in point, and to furnish ample authority for the conclusion that the simultaneous repeal and re-enactment of the provisions under consideration do not constitute such a repeal as would be of any avail to the defendant herein, and it may be added that this doctrine has been distinctly enunciated by this court in the cases of *Renshaw* v. *Lane County,* 49 Or. 526 (89 Pac. 147), and *Bayless* v. *Douglas County,* 57 Or. 301 (111 Pac. 384).

5. Finally, it has been urged that the title of Chapter 278 of the Laws of 1913, is so defective as to render the act void, and the case of *State* v. *Levy,* 76 Or. 63 (147 Pac. 919), is cited in support of this contention. A careful examination of the enactments discloses, however, that the citation does not support this theory. The title of the act in question reads as follows:

"To regulate the business of loaning money or credit by persons, firms, and corporations other than national banks, licensed bankers, trust companies, savings banks, building and loan associations, real estate brokers and pawnbrokers."

The regulation of the business as indicated would naturally and logically connect the state banking board and the state examiner with the management and conduct of administering such regulation, and the provisions are therefore germane to the title. In the case of *State* v. *Levy,* 76 Or. 63 (147 Pac. 919), there is no logical connection between the powers of a railroad

commissioner and the duty of supervising the business of a commission merchant.

The conclusion is that there is no substantial error in the record, and the judgment of the lower court should be affirmed.

AFFIRMED.    REHEARING DENIED.

MR. JUSTICE BURNETT and MR. JUSTICE McBRIDE dissent.

MR. JUSTICE EAKIN did not sit.

Denied February 29, 1916.

ON PETITION FOR REHEARING.

(155 Pac. 364.)

*Mr. G. E. Hamaker,* for the petition.

*Mr. George Mowry,* Deputy District Attorney, *Mr. Walter H. Evans,* District Attorney, and *Mr. John A. Collier,* Deputy District Attorney, *contra.*

In Banc.    MR. JUSTICE BENSON delivered the opinion of the court.

Counsel for defendant Ware in his petition for rehearing urges upon this court a further consideration of two contentions: (1) That the judgment of conviction should be reversed because of the fact that defendant's private papers were obtained by unlawful seizure and search, and that the trial court erred in denying his motion filed before trial for a return thereof; and (2) that the court erred in permitting certain cross-examination of the defendant.

6–9. Considering these in the order indicated, we may say that the case of *Weeks* v. *United States,* 232 U. S.

383 (58 L. Ed. 652, Ann. Cas. 1915C, 1177, L. R. A. 1915B, 834, 34 Sup. Ct. Rep. 341), is relied upon by counsel in support of his contention. A careful examination of this opinion discloses that the facts in that cause are decidedly different from those in the one at bar. In that case, the officers entered his house in his absence, and without a warrant of arrest. In the present instance, the papers were taken at the time of the arrest from the defendant's place of business. In addition, the Circuit Court subsequently made an order impounding the papers for use upon the trial, which it had a right to do: *United States* v. *McHie* (D. C.), 196 Fed. 586. We are unable to see that our former opinion is out of harmony with the overwhelming weight of authority. We do not wish, however, to be understood as commending the procedure of the district attorney's office, for, in our view, they were not justified in the reckless methods they pursued in obtaining evidence. If the defendant suffered injury by the seizure of his papers, he had his remedy in some civil proceeding in the courts. However, as we have already indicated, the courts will not pause in the orderly trial of a criminal cause to inquire into the manner in which the evidence was secured. The private papers referred to are the property of the defendant, and, upon proper application to the clerk of this court, they will be returned to him.

As to the second contention of counsel, there is nothing to be said in addition to the statement of our former opinion.

The petition for rehearing is denied.

AFFIRMED.　REHEARING DENIED.

MR. JUSTICE EAKIN absent.