[Civ. No. 11353. First Appellate District, Division One.—August 13, 1940.]`

GIFFORD LYNE SOBEY, Respondent, v. WILLIAM R. MOLONY et al., Appellants.

Earl Warren, Attorney-General, and Harold W. Conklin, Deputy Attorney-General, for Appellants.

Philbrick McCoy, Claude Minard, Gerald H. Hagar, Fred B. Wood and Arthur McHenry, as *Amici Curiae,* for Appellants.

H. C. Lucas and Bradford M. Melvin for Respondent.

PETERS, P. J.—The State Board of Medical Examiners appeals from a judgment granting a peremptory writ of man-

date directing the Board to refrain and desist from hearing a complaint charging respondent with professional misconduct.

The petition for a writ of mandate, to which appellant demurred, discloses that on May 24, 1939, a complaint was filed with the appellant Board charging respondent, a duly licensed physician and surgeon, with having committed certain designated acts which, it is alleged, constituted unprofessional conduct. The complaint alleged that on July 25, 1934, April 15, 1936, and March 15, 1937, respondent violated section 2377 of the Business and Professions Code. In his petition for a writ of mandate respondent urged that the complaint must be dismissed for the reasons that all of the acts alleged were committed prior to the effective date of the Business and Professions Code in August of 1937; that that code repealed the old Medical Practice Act; that, properly interpreted, the provisions of the new code when read in conjunction with the repeal had the effect of remitting all offenses theretofore committed but not at the time of the repeal the subject of prosecution. These arguments convinced the trial court, and the writ issued.

It was respondent's position in the trial court, and it is his contention here, that the legal effect of the adoption of the Business and Professions Code and the simultaneous repeal of the Medical Practice Act was, and is, to prohibit the institution, after August of 1937, of disciplinary proceedings against any offender where the offense charged was committed before that date. It is contended that this result must follow even though the acts set forth in the complaint constituted not only violations of the Business and Professions Code, but also constituted violations of the old Medical Practice Act.

To understand this contention reference must be made to certain provisions of the Medical Practice Act and of the Business and Professions Code. Section 14 of the Medical Practice Act (Deering's Gen. Laws 1931, Act No. 4807; Stats. 1913, chap. 354, p. 722), as amended, provided, at the time the offenses contained in the complaint were alleged to have been committed, that:

"The words 'unprofessional conduct' as used in this act, are hereby declared to mean:

"First—The procuring or aiding or abetting or attempting or agreeing or offering to procure a criminal abortion." The

original section as adopted in 1913 contained substantially the same language.

Section 2377 of the Business and Professions Code as adopted in 1937 (this being the section that respondent is charged with violating) provides:

"The procuring or aiding or abetting or attempting or agreeing or offering to procure a criminal abortion constitutes unprofessional conduct within the meaning of this chapter."

The Medical Practice Act was repealed by section 30003 of the Business and Professions Code in 1937. Simultaneously, the Business and Professions Code, embodying section 2377 above-quoted, was enacted. It therefore appears that, since 1913 to date, there has never been a moment of time when the procuring of a criminal abortion did not constitute unprofessional misconduct.

Section 2 of the Business and Professions Code provides:

"The provisions of this code in so far as they are substantially the same as existing statutory provisions relating to the same subject matter shall be construed as restatements and continuations thereof, and not as new enactments."

Section 4 of that code provides:

"No action or proceeding commenced before this code takes effect, and no right accrued, is affected by the provisions of this code, but all procedure thereafter taken therein shall conform to the provisions of this code so far as possible." Substantially, the same language is to be found in section 2002 of that code, which is in that part of the code relating to the practice of medicine.

It is a demonstrable fact not challenged by respondent, that, by the codification of the law applicable to the practice of medicine in the Business and Professions Code, the legislature did not intend or attempt to change the substantive provisions of existing statutes, but simply intended to codify and clarify existing provisions. This code does not stand alone. The code commission was created by Statutes of 1929, page 1427, chapter 750. Since that time it has prepared codifications of many branches of the law. The Business and Professions Code, as adopted in 1937, does not apply only to the practice of medicine but also to seventeen other businesses and professions. In codifying the law the code commission and the legislature avoided, wherever possible any substantive change in existing law.

Before discussing the legal effect of sections 4 and 2002 of the Business and Professions Code, *supra,* reference should be made to several general principles. ██ When a statute, although new in form, re-enacts an older statute without substantial change, even though it repeals the older statute, the new statute is but a continuation of the old. There is no break in the continuous operation of the old statute, and no abatement of any of the legal consequences of acts done under the old statute. Especially does this rule apply to the consolidation, revision, or codification of statutes, because, obviously, in such event the intent of the legislature is to secure clarification, a new arrangement of clauses, and to delete superseded provisions, and not to affect the continuous operation of the law.

This is the rule of decision in California and in the other states, even in the absence of legislative declaration. The cases have clearly established the rule that such restatement, without substantial change, neutralizes any repeal, express or implied. No saving clause or other expression of legislative intent is necessary to accomplish this result. The intent is derived from the fact and purpose of a restatement without change. (*Estate of Martin,* 153 Cal. 225 [94 Pac. 1053]; *Perkins Mfg. Co.* v. *Clinton Const. Co.,* 211 Cal. 228 [295 Pac. 1, 75 A. L. R. 439]; *Chambers* v. *Davis,* 131 Cal. App. 500 [22 Pac. (2d) 27]; *Gastineau* v. *Meyer,* 131 Cal. App. 611 [22 Pac. (2d) 31].) The cases from other jurisdictions are in complete accord. They are so numerous and so completely in harmony that their enumeration is not necessary. Many of them are collected and referred to in 59 Corpus Juris, page 1058, section 624.

This rule of construction, based as it is on the presumed legislative intent, applies whether the subject of the statute is civil or criminal law. ██ It is well-settled that, independently of a saving clause, a person may lawfully be prosecuted, under a repealed and re-enacted statute, for a crime committed prior to the date of the re-enactment. (Lewis' Sutherland Statutory Construction, 2d ed., vol. 1, p. 445, sec. 238; Black on Interpretation of Laws, 2d ed., p. 421, secs. 124, 125; *State* v. *Gumber,* 37 Wis. 298; *State* v. *Ware,* 79 Or. 367 [154 Pac. 905, 155 Pac. 364]; *State* v. *Wish,* 15 Neb. 448 [19 N. W. 686]; *Bauer* v. *State,* 99 Neb. 747 [157 N. W. 968]; *State* v. *Brewer,* 22 La. Ann. 273; *Borough of Lang-*

*horne Manor* v. *Clayton,* 129 Pa. Super. 557 [196 Atl. 584];
see, also, *Board of Dental Examiners* v. *Lazzell,* 172 Md. 314
[191 Atl. 240].)

None of the cases cited by respondent establishes any different rule. Without listing the cases cited by him, it is sufficient to state that some of them are cases of repeal without a re-enactment, some involve a repeal with the passage of a new statute making substantial changes in the old, while others involve statutes that contain clauses expressly remitting past penalties. None of these cases is in point.

In the present case sole reliance need not be placed on the general rule above-referred to. The legislative intent is not left to construction at all. Section 2 of the Business and Professions Code, above-quoted, expressly codifies the rule. This is not an isolated expression of legislative intent. Provisions substantially similar to section 2 of the Business and Professions Code appear in section 5 of the Civil, Code of Civil Procedure, Penal and Political Codes, and in section 2 of the Probate, Elections, Harbors and Navigation, Health and Safety, Insurance, Labor, Military and Veterans, Public Resources, Revenue and Taxation, Streets and Highways, Vehicle, and Welfare and Institutions Codes, in section 3 of the Agricultural Code and in section 4 of the Fish and Game Code. The reasons why such provisions were placed in the original codes and carried into the new codes are not hard to ascertain. Prior to 1872 it had been held that when the legislature amended or revised a statute, and, in response to a constitutional requirement reprinted the text in full, it effected a complete new enactment and was not a continuation of the old. (*Billings* v. *Harvey,* 6 Cal. 381; *Billings* v. *Hall,* 7 Cal. 1; *Morton* v. *Folger,* 15 Cal. 275; *Clarke* v. *Huber,* 25 Cal. 593; *Bensley* v. *Ellis,* 39 Cal. 309.) The legislature, in adopting the codes, did not leave its intent to conjecture—it expressly codified its intent in the provisions above-referred to and in section 325 of the Political Code, which are substantially similar to section 2 of the Business and Professions Code.

It thus appears that, if the legislature had not enacted any saving clause at all, or had merely enacted section 2 of the Business and Professions Code, there could be no doubt of the right of the appellant Board to proceed against respondent after August of 1937 for offenses committed prior thereto.

This is not, and cannot, seriously be challenged by respondent.
He contends, however, that by sections 4 and 2002 of the Business and Professions Code above-referred to, the legislature has expressed its intent to save only actions *actually commenced* prior to the repeal of the old Medical Practice Act or to save *rights accrued* thereunder, and that properly construed their legal effect was to remit all offenses where complaints had not been instituted prior to August of 1937 for offenses committed prior to that time. In this connection respondent points out that the law governing the practice of medicine is penal in nature (which is correct), and properly contends that penal statutes must be strictly construed in favor of the accused. Applying this rule of construction to these sections, and applying the rule of *expressio unius est exclusio alterius,* and the rule that a special statute controls a general one, respondent argues that the express saving of actions commenced and rights accrued, by necessary implication, evinces an intent to bar prosecution where action has not been commenced prior to the repeal and re-enactment. Otherwise, so respondent argues, the saving clauses in sections 4 and 2002 would have no purpose.

The effect of respondent's argument is this: He concedes that, if the Business and Professions Code contained no saving clause or clauses at all, he could be prosecuted for offenses committed prior to the adoption of that code; he further must concede that if section 2 were the only saving clause that the Board could lawfully prosecute him; but, according to his view, by enumerating pending actions and rights accrued in sections 4 and 2002 it must be presumed that the legislature intended to remit all offenses committed prior to August, 1937, where prosecutions had not been instituted prior to that date. In other words, the sole purpose of sections 4 and 2002, according to respondent, was to remit offenses not being prosecuted at the time of the adoption of the new law. This would be to attribute to the legislature the intent of doing by indirection what it easily could have done directly. It is a most peculiar way to remit offenses by a provision specifically saving certain other offenses. Moreover, in attempting to ascertain the legislative intent, it must be kept in mind that statutes regulating the practice of professions and providing for the discipline of offending members, while penal in nature, are also intended to protect the public from unscrupu-

lous, careless or dishonest practitioners. The legislature, we must assume, unless a different intent is clearly expressed to the contrary, did not intend by the codification of the law relating to medical practice, to benefit offending doctors at the expense of the general public. Yet this would be the result if it should be held that by the codification of the law, with the simultaneous repeal of the old law, doctors were placed beyond prosecution for acts constituting grounds for revocation of license both under the former and existing law. Fortunately, neither reason nor authority calls for such a strained construction.

On behalf of appellant it is urged that the provision appearing in sections 4 and 2002, saving rights accrued, saves prosecutions for offenses committed prior to August, 1937, although complaints were not filed until after that date. It is urged that, as applied to the right of appellant Board to initiate proceedings for revocation of a license, the term "right accrued" must be construed to mean "to arrive, to commence, to come into existence, to become a present enforceable demand". Respondent contends the terms only apply to vested rights. There is much to be said for appellant's construction. Obviously, the legislature has no power to destroy vested rights. When it expressly provided for preserving rights accrued, the intendment must be that it sought to preserve something it had the legal capacity to abrogate.

There are other and compelling reasons, however, why sections 4 and 2002 should be construed to continue the old statute in effect. Provisions such as these sections are not peculiar to the Business and Professions Code. Substantially similar clauses are to be found in section 8 of the Political Code and Code of Civil Procedure, and in section 6 of the Civil Code. It must be kept in mind, as already pointed out, that these Codes also have provisions substantially similar to section 2 of the Business and Professions Code. The two sections must be given effect, if possible. Obviously, section 2 was intended, among other things, as a saving clause where no substantial change was made in the law. Section 4 can be reconciled with section 2, and effect given to both sections, by holding that it was intended to cover situations, either where the codification made a substantial change in the law, or where the legislature at that or subsequent sessions amended the law in a substantial manner. This seems to reasonably ex-

plain why such provisions were inserted in the original codes, and in the code now under consideration. It is true that no substantive changes were contemplated by the adoption of the Business and Professions Code. Yet the clauses still serve a useful purpose. At every legislative session there are introduced many bills dealing with the various professions, some of them affecting the substance of regulatory statutes. Many such bills were introduced during the legislative session of 1937 when this Code was enacted. Some of them passed, and became effective on the same day that the Code became effective. Sections 4 and 2002 were aimed at covering such situations and have no application to situations where no substantial changes have occurred. Under such circumstances the rule of *expressio unius,* and the other rules of construction relied upon, have no application. Those rules do not apply where to apply them would operate contrary to the legislative intent. (*Blevins* v. *Mullally,* 22 Cal. App. 519 [135 Pac. 307].) To construe the sections as contended for by respondent would be to necessarily create a repugnancy between section 2 and sections 4 and 2002. As construed in this opinion, there is no repugnancy between the sections. Each can and does have full play in its own field.

Respondent relies on several cases, the most important of which is *State* v. *Showers,* 34 Kan. 269 [8 Pac. 474]. In that case, as in this, there was a repeal and re-enactment of a liquor law, and the defendant was indicted for a violation committed prior thereto. In the new statute there was a saving clause providing that: ''All prosecutions pending at the time of the taking effect of this act shall be continued the same as if this act had not been passed.'' In addition, in the general laws of Kansas, was a general saving clause providing: ''The repeal of a statute does not revive a statute previously repealed, nor does such repeal affect any right which accrued, any duty imposed, any penalty incurred, nor any proceeding commenced under or by virtue of the statute repealed. The provisions of any statute, so far as they are the same as those of any prior statute, shall be construed as a continuation of such provisions, and not as a new enactment.''

The court held that the defendant could not be prosecuted after the re-enactment for the offense committed prior to the adoption of the new statute. The court apparently held that the special saving clause in the liquor law prevailed over

the general statute, and that, under the special statute, the right to initiate proceedings for acts committed prior to repeal and re-enactment was barred by necessary implication. Appellant Board attacks the authority of the Showers case. A fair reading of the decision, however, convinces us that, if the theory of that case were applied to the facts involved herein, the respondent would be immune from prosecution. But we are not convinced that the Kansas case is sound, and decline to follow it. It is our opinion that it fails to give proper weight to the doctrines of statutory construction set forth in this opinion. Moreover, the *rationale* of the Kansas case is contrary to cases from other jurisdictions. In *Great Northern Ry. Co.* v. *United States,* 155 Fed. 945, 958, a railroad company was indicted after repeal and simultaneous re-enactment of a statute. A general federal statute (16 Stats. 432), provided: ''The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, *unless the repealing act shall so expressly provide* and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability.'' (Italics ours.)

A saving clause in the special statute involved (34 Stats. 595), was as follows: ''That all laws and parts of laws in conflict with the provisions of this act are hereby repealed, but the amendments herein provided for shall not affect causes now pending in courts of the United States, but such causes shall be prosecuted to a conclusion in the manner heretofore provided by law.'' The court rejected the contention that this saving clause by necessary implication extinguished the right to sue where a cause was not pending at the time of repeal and re-enactment, and held that the saving clause of general statute and special law should both be given effect, and that application of the general statute preserved the right to sue for violations committed before repeal and re-enactment although action had not theretofore been commenced. See, also, *First Nat. Bank* v. *Weidenbeck,* 97 Fed. 896.

It is our duty in this proceeding to attempt to ascertain and to give effect to the intent of the legislature. In attempting to arrive at that intent we are required to give effect, if possible, to all of the provisions of the law. To adopt re-

spondent's construction of the clauses would be to disregard section 2, to treat sections 4 and 2002 as repugnant to section 2, and to hold sections 4 and 2002 controlling as special statutes over the general one. The construction we have adopted gives full effect to both clauses. Moreover, the construction adopted herein is not only a reasonable one, but it also attributes to the legislature a desire and intent to adopt laws in the public interest. We cannot believe that the legislature was so solicitous of doctors who had violated their responsibilities to the public and who had been false to their trust, that it intended to abrogate all prosecutions for offenses committed prior to the codification of the law. It is much more reasonable to assume that no such intent existed.

The judgment appealed from is reversed.

Knight, J., and Ward, J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on October 10, 1940. Houser, J., and Carter, J., voted for a hearing.