STATE

v.

John Francis BABBITT, Jr.

No. 81–222–C.A.

Supreme Court of Rhode Island.

March 15, 1983.

Reargument Denied April 14, 1983.

Dennis J. Roberts II, Atty. Gen., Sharon O'Keefe, Sp. Asst. Atty. Gen., for plaintiff.

William F. Reilly, Public Defender, Janice M. Weisfeld, Asst. Public Defender, for defendant.

## OPINION

KELLEHER, Justice.

In this criminal action, a Superior Court jury returned guilty verdicts against the defendant, John Francis Babbitt, Jr. (Babbitt), on nine of the eleven counts in an indictment reported by a grand jury on January 11, 1980. The indictment charged Babbitt with committing various sexual offenses between August of 1977 and June of 1979. Specifically, the offenses included three counts of "rape," in violation of G.L. 1956 (1969 Reenactment) § 11–37–1; six counts of committing the "abominable and detestable crime against nature," in violation of § 11–10–1; and two counts of transporting "for the purposes of lewd and indecent acts," in violation of § 11–34–5. A defense motion for a judgment of acquittal on one of the "crime against nature" counts was granted by the trial justice, and the jury returned a not-guilty verdict on anoth-

er such count. On the remaining nine counts, Babbitt was sentenced to an aggregate term of thirty years' imprisonment.

Babbitt raises several issues on this appeal from his conviction. He contends that (1) the trial justice erred by allowing an inculpatory statement into evidence; (2) the court lacked jurisdiction over the "rape" counts of the indictment; (3) the court lacked jurisdiction over the "crime against nature" counts of the indictment; and (4) the court should have declined jurisdiction over the "transporting for indecent purposes" counts because they were vitiated by a legislative amendment. Before addressing ourselves to the merits of Babbitt's arguments, we shall review the facts.

The two victims of Babbitt's sexual assaults were his fifteen-year-old niece and his ten-year-old stepdaughter. At trial, both victims testified about a variety of sexual assaults that had occurred over a two-year period, the sordid details of which are not germane to the issues raised on appeal. Upon the completion of their testimony, a question arose regarding the admissibility of an express admission of guilt by Babbitt which had been related to his sister-in-law, Lenore. Babbitt's attorney complained that the state had notified him of the inculpatory statement just two days prior to its introduction. He asserted that the "eleventh-hour" disclosure of the admission was a violation of Babbitt's prior request for discovery under Rule 16 of the Superior Court Rules of Criminal Procedure.

The trial justice held a voir-dire hearing on Babbitt's motion to preclude the state from permitting Lenore to testify. The motion was denied; thereafter, Lenore testified that on September 23, 1979, Babbitt told her, "Lennie, I'm sorry for what I have done, and I'm ashamed * * * and I was hoping it was going to be a skeleton that was put in the closet and not let out." With respect to the timeliness of the disclosure of the statement to defense counsel, Lenore averred that she had not apprised the police of Babbitt's confession during the

investigation. However, she explained that she had previously disclosed the confession to Babbitt's wife, Karen. Lenore further testified that she was first notified that she was to appear as a witness in the case two days before her testimony was given and that it was only on the preceding Monday that she had first disclosed the contents of the confession to law-enforcement personnel.

Following Lenore's testimony, Karen appeared as a state witness and testified that she had spoken to two officers, Detective Bricault and Lieutenant Sullivan, at the Central Falls police station about the sexual assaults. However, she could not recall whether or not she had divulged Babbitt's confession to either of them. Karen explained that she "was under quite a bit of pressure at the time, and it's possible I did tell them. It's also possible I did not tell them." Finally, in his testimony, Detective Bricault avowed that Karen failed to mention Lenore's statement about Babbitt's confession to him on any of the occasions that he interviewed her.

We shall first dispose of Babbitt's allegation that the trial justice erred in allowing Babbitt's inculpatory statement into evidence. Babbitt alleges that the state failed to comply with the discovery provisions of Super.R.Crim.P. 16. Rule 16 provides that the attorney for the state, upon written request, shall deliver to the defendant specified items known to the state or those that "by the exercise of due diligence may become known to the attorney for the State."

In determining whether or not the state had violated the provisions of Rule 16, the trial justice made certain findings of fact based on the voir-dire testimony of Lenore, Karen, and Detective Bricault. He found that (1) neither the Attorney General nor the Central Falls police had in their possession the substance of Lenore's testimony when the case was being prepared for trial; (2) the police department did not deliberately attempt to keep the information from Babbitt or the Attorney General; and (3) Lenore's testimony could not have been dis-

covered through the exercise of due diligence. Relying on these findings, the trial justice concluded that the state had not violated its duty to disclose pursuant to Rule 16 and thus declined to impose the sanctions requested by Babbitt.

The imposition of sanctions under Rule 16 is a matter within the sound discretion of the trial justice. *State v. Darcy,* R.I., 442 A.2d 900, 902 (1982). We shall not disturb a decision of a trial justice made in the exercise of a discretionary power unless it clearly appears that such discretion has been abused or improperly exercised. *Berberian v. Travisono,* 114 R.I. 269, 273–74, 332 A.2d 121, 124 (1975); *Levy v. Equitable Fire & Marine Ins. Co.,* 88 R.I. 252, 254, 146 A.2d 231, 232–33 (1958). With these rules in mind, we cannot say that Babbitt has sustained his burden of establishing that the trial justice abused his discretion in allowing the admission into evidence.

Babbitt was afforded the opportunity of a full and fair hearing on his objection to the introduction of his inculpatory statement. Under such circumstances a hearing is mandated when one is requested by the defendant. *See e.g., United States v. Espericueta-Reyes,* 631 F.2d 616 (9th Cir.1980). In our opinion, the trial justice's determination following the voir-dire hearing that the state had acted with due diligence was reasonable. We reach this conclusion relying upon Lenore's testimony that she had not previously revealed Babbitt's confession to the police, Karen's lack of certainty about what she had told the police, and Detective Bricault's avowal that Karen had not disclosed the confession to him. Moreover, as the trial justice noted, the prosecutor related the nature of Lenore's testimony to defense counsel as soon as it became available. In light of the foregoing, we can discern no error in the trial justice's decision to admit the inculpatory statement.

Babbitt also attacks the introduction of his admission on constitutional grounds, alleging that it violated his right to a fair trial. There is no question that under certain circumstances the belated disclosure of inculpatory statements made prior to trial may interfere with a defendant's right to due process and effective assistance of counsel. *State v. Darcy,* R.I., 442 A.2d 900, 903 (1982). The first essential of trial fairness is to ensure a reasonable time for adequate preparation of the accused's defense. *United States v. Anderson,* 509 F.2d 312, 323 (D.C.Cir.1974), *cert. denied,* 420 U.S. 991, 95 S.Ct. 1427, 43 L.Ed.2d 672 (1975).

The tension between the defendant's right to a fair trial and the probative value of inculpatory statements is reconciled when appropriate procedural safeguards are employed. In *United States v. Espericueta-Reyes,* 631 F.2d 616, 622–24 (9th Cir.1980), the government learned of the defendant's inculpatory statements the day before trial during the pretrial interview with the witness. The substance of the newly discovered statements was promptly disclosed to defense counsel, and he was made aware of the government's intent to use the statements at trial. The trial justice permitted the government to introduce the defendant's statements after offering defense counsel a recess or additional time to rebut or counteract the effect of the admission of the inculpatory statements. The court ruled that the trial justice did not err in admitting the statements into evidence in the absence of a showing by the defendant that the disclosure on the eve of trial had prejudiced him. *Id.; see also United States v. Anderson,* 509 F.2d 312, 325 (D.C.Cir. 1974).

Similarly, in the case at bar, the trial justice found that the government in good faith did not learn of Babbitt's confession until the eve of trial. Defense counsel was promptly informed of the admission and the government's intent to introduce it at trial. The trial justice offered Babbitt an opportunity to request a recess following the close of Lenore's direct testimony if he needed more time to prepare adequately before commencing cross-examination. He also assured Babbitt that he would enter-

tain a motion to give him more time in which to counteract the effect of Lenore's testimony at a later point in the trial. It is clear to us that the trial justice adequately protected Babbitt's due-process rights by affording him these opportunities to request more time throughout the trial. *See State v. Coelho,* R.I., 454 A.2d 241 (1982). Under such circumstances, Babbitt cannot complain that the introduction of the admission constituted the "complete surprise" required in *State v. Darcy,* R.I., 442 A.2d 900, 903 (1982), to maintain successfully that effective assistance of counsel was denied. Consequently, we find no fault with the trial justice's ruling denying Babbitt's motion to pass the case on unfair-trial grounds.

Having disposed of Babbitt's objections to the introduction of his inculpatory statement, we turn to his challenges of the court's jurisdiction over several of the counts in the indictment. The first relates to the repeal and reenactment of the common-law rape and seduction statute, § 11–37–1, which, at the time of the alleged offenses, provided:

"Every person who shall commit rape shall be imprisoned for life or for any term not less than ten (10) years."

 We have defined common-law rape as the nonconsensual act of sexual intercourse committed by a man with a woman who is not his wife. Furthermore, it must be committed when the victim's resistance is overcome by force or fear, or under other prohibited conditions. Additionally, penetration is unquestionably an element of the crime of rape. *State v. Golden,* R.I., 430 A.2d 433, 435 (1981). The indictment was issued pursuant to the common-law rape statute because it was the statute in effect at the time Babbitt al-

legedly sexually assaulted the two children. However, subsequent to the commission of the assault but prior to the return of the indictment, the Legislature repealed the common-law rape statute and reenacted it as the sexual-assault statute, G.L.1956 (1981 Reenactment) § 11–37–2. In pertinent part, it provides as follows:

"A person is guilty of first degree sexual assault if he or she engages in sexual penetration with another person, not the spouse of the accused, and if any of the following circumstances exist:

(A) The victim is thirteen (13) years of age or under * * *.

* * * * * *

(C) The accused uses force or coercion." [1]

 Babbitt maintains that the indictment charged him with violating a repealed statute, thus depriving the Superior Court of jurisdiction over the matter. When the General Assembly repealed the common-law rape statute and reenacted it as the sexual-assault statute, it failed to provide a "saving" clause that would preserve liability for any crimes committed prior to the repeal. Furthermore, the general saving clause, G.L.1956 (1980 Reenactment) § 43–3–23 [2] does not apply in the instant matter because the prosecution was not pending at the time of the repeal.

Because of the lack of any saving provision, we are exhorted by Babbitt to apply the common-law abatement doctrine to the rape charges, thereby vacating those counts. At common law the general rule was that in the absence of an effective saving clause, the repeal of a penal statute operated to bar prosecution for prior violations of the statute. *State v. Souza,* 456 A.2d 775 (R.I.1983); *State v. Fraser,* 82

1. "Sexual penetration" is defined in G.L.1956 (1981 Reenactment) § 11–37–1 as, among other things, "sexual intercourse."

2. General Laws 1956 (1980 Reenactment) § 43–3–23 provides in pertinent part:
 "Effect of repeal on criminal prosecutions. —No suit, prosecution or indictment, pending at the time of the repeal of any statute for

any offense committed * * * shall in any case be affected by such repeal, but such suit, prosecution or indictment, may be proceeded with, and such act shall be deemed to be in force for the purpose of prosecuting the same to final judgment and execution or sentence, as the case may be."

R.I. 261, 264, 107 A.2d 295, 296 (1954). The rule was founded on the theory that the Legislature by its repeal determined that the conduct in question should no longer be prosecuted as a crime. *Ex parte Mangrum,* 564 S.W.2d 751, 753 (Tex.Cr.App.1978) (citing *United States v. Chambers,* 291 U.S. 217, 54 S.Ct. 434, 78 L.Ed. 763 (1934)).

In his argument, Babbitt neglects to mention that the abatement doctrine applies in its full force only when there is an outright legislative repeal and no other new or old law exists under which the offender may be prosecuted. *Sekt v. Justice's Court of San Rafael T.P.,* 26 Cal.2d 297, 304, 159 P.2d 17, 21 (1945). Consequently, the state urges us to maintain this action by applying the simultaneous-repeal-and-reenactment exception to the abatement doctrine. This exception holds that a new act should be considered a continuation of the old in situations in which no substantial changes have been made in the legislation. Under such circumstances, there is no abatement of any of the legal consequences of acts committed under the old statute. *Sobey v. Molony,* 40 Cal.App.2d 381, 104 P.2d 868 (1940). No saving clause or other expression of legislative intent is necessary because the intent may be gleaned from a comparison of the two statutes. *Id.* at 385, 104 P.2d at 870. This exception has been aptly described by the Arkansas Supreme Court in *Vangilder v. Faulk,* 244 Ark. 688, 690–91, 426 S.W.2d 821, 823 (1968):

> "[W]here both the prior and subsequent acts legislate upon the same subject and the subsequent act re-enacts substantial portions of the original act but either adds, eliminates or modifies provisions of the original act, the subsequent act shall be treated as amendatory only in spite of language expressly repealing the prior act. *Bear Lake & River Waterworks & Irrigation Co. v. Garland,* 164 U.S. 1, 17 S.Ct. 7, 41 L.Ed. 327 (1896)."

Keeping the old and new statutes in mind, we believe that the Legislature, in reenacting the crime of common-law rape as first-degree sexual assault, did not intend to pardon violators of the old statute. It is "reasonable, logical, and constitutional" to conclude that the prior statute remains applicable to offenses committed prior to the amendment's effective date. *See State v. Sampson,* 120 N.H. 251, 254, 413 A.2d 590, 591 (1980). Although we have said that the new law changed the statutory framework of sexual offenses, *State v. Malouin,* R.I., 433 A.2d 176, 177 (1981), it is quite obvious that the common-law crime of rape was embodied in the new statute. A parallel reading of the two statutes clearly indicates that every element needed to prove a violation under the old statute for rape is also needed to prove first-degree sexual assault under the new statute. The new statute merely expands the meaning of sexual penetration by force to include, in addition to sexual intercourse, the intrusion of any part of a person's body into the genital or anal openings of another person's body. Section 11–37–1. The substitution of the word "person" for the words "male" and "female" does not substantially change the elements of the crime. *State v. Rudy,* 101 Ohio App. 241, 243, 139 N.E.2d 81, 83 (1954).

We are of the opinion that the effect of the change in the law as it relates to the crime of rape was merely amendatory in nature; there was never a time when the elements of the offense were not considered criminal. Babbitt had unequivocal notice that his conduct was felonious. We are in complete agreement with the rule of law laid down by the Pennsylvania Supreme Court in *In re Dandridge,* 462 Pa. 67, 337 A.2d 885 (1975), where the conviction of a judge for misuse of funds was upheld under a statute that was repealed prior to the commencement of prosecution against him. There, the court ruled that nothing interferes with the power of the state to prosecute without interruption even when a statute is repealed without a saving clause if the elements of the crime prohibited in the first statute remain in the reenacted statute. *Id.* at 74, 337 A.2d at 889. Consequently, we find Babbitt's allegation that

the Superior Court lacked jurisdiction over the rape counts to be meritless.

 Babbitt's second jurisdictional allegation relates to the counts charging him with committing an abominable and detestable crime against nature in violation of § 11–10–1. He contends that the Legislature implicitly repealed § 11–10–1 when it repealed chapter 37 of title 11 because both statutes prohibit the same conduct. We previously rejected a similar contention in *State v. Souza*, 456 A.2d 775 at 781 (R.I. 1983), where we inferred that repeals by implication are not favored. "Only when two statutory provisions are irreconcilably repugnant will a repeal be implied and the last enacted statute preferred." *Id.* We concluded that although both statutes covered the same subject matter, they were not repugnant; and consequently, § 11–10–1 retained viability notwithstanding the enactment of the sexual-assault statute.

 The final jurisdictional issue raised by Babbitt relates to the counts charging him with transporting for indecent purposes in violation of § 11–34–5. He argues that the convictions should be vacated because the Legislature amended § 11–34–5 while prosecution was pending against him. We agree.

The indictment returned in January of 1980 charged Babbitt with violating the provisions of § 11–34–5, which read, in pertinent part, as follows:

"It shall be unlawful for any person * * to * * * transport * * * another for the purpose of prostitution, or for any other lewd or indecent act * * *."

Thereafter, in May of 1980, the Legislature amended § 11–34–5 by adding the requirement that the proscribed conduct be conducted "for pecuniary gain." The additional element of "pecuniary gain" was not attributable to Babbitt's conduct in the counts for which he was indicted.

The general saving clause, § 43–3–23, by its express terms saves prosecutions or indictments that are pending at the time of repeal, thereby creating another exception to the common-law abatement doctrine discussed above. This section clearly governs in the instant matter because prosecution was pending against Babbitt for five months prior to the amendment. However, there is a caveat to § 43–3–2 set forth in § 43–3–2 which provides:

"In the construction of statutes the provisions of this chapter shall be observed, unless the observance of them would lead to a construction inconsistent with the manifest intent of the general assembly, or be repugnant to some other part of the same statute."

Accordingly, the general saving statute should not be applied when so doing would lead to a construction inconsistent with the manifest intent of the General Assembly. *State v. Macarelli*, 118 R.I. 693, 698, 375 A.2d 944, 946 (1977).

In analyzing the legislative intent in the light of the amendment to § 11–34–5, we first note that chapter 34 of title 11 of the General Laws addresses itself to the problem of prostitution. In particular, the sections that immediately surround § 11–34–5, viz., § 11–34–4 entitled "Search for and delivery of inmate of house of ill fame," and § 11–34–5.1 entitled "Deriving support or maintenance from prostitution" indicate that it is the sexual acts that accompany prostitution with which the Legislature is concerned. The 1980 amendment reinforces this view which is also consistent with the interpretation of the statute by the District Court of Rhode Island in *Coyote v. Roberts*, 502 F.Supp. 1342 (D.R.I.1980). The then-Chief Judge Raymond J. Pettine concluded that "the statute is now directed at suppressing specifically that type of sexual activity commonly regarded as 'prostitution.'" *Id.* at 1348.

Our interpretation leads us to conclude that "transporting for indecent purposes" in the absence of pecuniary gain, as in the instant case, is not now outlawed by § 11–34–5 because a contrary ruling would be inconsistent with the legislative intent. Babbitt's sexual assaults did not constitute

acts of prostitution. However, this is not to say, as the state suggests, that our interpretation somehow implies that the Legislature meant to sanction Babbitt's behavior. The substantive sexual offenses committed may be punished by law under the appropriate sections of chapter 37 of title 11 of the General Laws. We hold only that the amendment to § 11–34–5 indicates that the Legislature was not concerned in that section with the transporting of minors for sexual offenses that are not committed for profit, gain, or pecuniary motive.

The defendant's appeal is sustained in part and denied in part. The convictions for rape and engaging in the abominable and detestable crime against nature are affirmed. The convictions for transporting for indecent purposes are vacated. The papers of the case are remanded to the Superior Court for further proceedings consistent with this opinion.