## Scranton City, Appellant, v. Rose.

*Mines and mining—Municipal bureau of mine inspection—Refusal to furnish plans—Misdemeanor—Criminal law—Ordinance —Repeal of ordinance—Act of July 26, 1913, P. L. 1439.*

The Act of July 26, 1913, P. L. 1439, authorizing municipal corporations in the anthracite regions to create a bureau of mine inspection and surface support, does not become operative until municipal action is taken creating such bureau. The refusal to furnish maps or plans of coal mines within municipal limits does not become a misdemeanor until an ordinance has been passed creating the bureau contemplated by the act. If after the creation of such a bureau a mine superintendent refuses to furnish maps or plans he may be prosecuted, but if the ordinance creating the bureau is repealed pending the prosecution all further proceedings cease on the repeal.

Criminal proceedings which have not been determined by final judgment are wiped out by a repeal of the act under which the prosecution for the offense took place.

Argued March 2, 1915. Appeal, No. 26, March T., 1915, by plaintiff, from judgment of Q. S. Lackawanna Co., June T., 1914, No. 6, sustaining appeal from magistrate in case of Scranton City v. C. C. Rose. Before RICE, P. J., ORLADY, HEAD, KEPHART and TREXLER, JJ. Affirmed.

Appeal from judgment of magistrate.

From the record it appeared that,

The Delaware and Hudson Company operates three collieries, viz: the Marvine, Leggett's Creek, and Von Storch, which are wholly or in part located in the City of Scranton. C. C. Rose, the defendant, is the superintendent in charge of the mining operations.

The City of Scranton, on August 5, 1913, adopted an ordinance, No. 44, creating a bureau of mine inspection and surface support, for the purpose of carrying into effect certain provisions of the Act of Assembly of July

26, 1913, P. L. 1439.  About five months, later, on January 10, 1914, the city repealed said ordinance No. 44.

In the meantime proceedings had been instituted against C. C. Rose before a magistrate for violating section 4 of the act which made it a misdemeanor to refuse maps or drawings of mines within the city limits to the municipal bureau of mine inspection and surface support.  Rose was convicted before the magistrate, but appealed from his decision.  Pending the appeal the ordinance was repealed.

The court in an opinion by EDWARDS, P. J., sustained the appeal and dismissed the proceedings.

*Error assigned* was the judgment of the court.

*David J. Davis,* City Solicitor, for appellant.—The city council cannot by any action on their part relieve the defendant from liability for the commission of an offense which the legislature had declared to be a misdemeanor: Kansas City v. White, 69 Mo. 26.

*Everett Warren,* with him *James H. Torrey,* for appellee.—The court did not err in dismissing the proceedings on the ground that the repeal by the City of Scranton, of the ordinance for carrying into effect the Act of 1913, put an end to all proceedings growing out of violation of the ordinance:  Naylor v. Galesburg, 56 Ill. 285;  Barton v. Gadsden, 79 Alabama 495;  Kansas City v. Clark, 68 Mo. 588;  Town of Rutherford v. Swink, 96 Tenn. 564.

OPINION BY KEPHART, J., July 21, 1915:

The defendant was convicted and fined $1,000 by a magistrate in the City of Scranton for a violation of Section 4 of the Act of July 26, 1913, P. L. 1439, in refusing to furnish to the bureau of mine inspection and surface support an accurate map or plan of the workings or excavations of the Delaware and Hudson Company's

coal mines within the city limits, for which company the defendant was superintendent. An appeal was allowed from this conviction and pending the appeal, the ordinance of the City of Scranton, under this act creating the bureau, was repealed.

The act was intended to protect the subjacent support of streets and highways, by requiring the adequate natural support to be kept or permitted to remain under the streets; or, where it was necessary to remove the coal, in lieu of the natural support, artificial support was to be supplied. The act authorized municipal corporations in the anthracite regions to create a bureau of mine inspection and surface support. It defined the qualifications of its members, their powers and duties, and required all persons affected by the act to furnish mine maps within three months after the creation of this bureau. The act forbids coal to be mined out unless surface support, as indicated, is permitted to remain, and provides a penalty for any violation of the act.

It will be seen that the purpose of the act and the mischief it was intended to remove could become active and have force and effect as law only by the creation, organization and existence of the bureau therein specified. The machinery which worked out the purpose of the act was lodged in the bureau. It was therefore the life and spirit of the act. The legislature in a sense delegated to one of its municipal subdivisions the power to supply by ordinance the essential feature to cause the act to operate and make it effective. There was no positive command on the municipal corporation to act. It might adopt and enforce the act if it so desired, and if, through exigencies of public affairs, it was necessary to withdraw from the benefits of the act, they could repeal the ordinance which secured these benefits. Therefore, the provisions of the act, and all that is attempted to be secured through its effective operation, lie dormant until life is given it by municipal legislative action and is kept in it by the continuance of such action. When

the City of Scranton passed the ordinance creating this bureau and appointing its members, it took the necessary steps (barring all other questions except the one we are discussing) to bring about the conditions contemplated by the statute, and the conditions and circumstances sought to be remedied, relieved or prevented, were then actively brought within the sphere of lawful regulation. This regulation made the refusal to furnish maps and plans, within three months after the bureau's creation, a misdemeanor, and subjected the offender to the penalty of the act. The lawful authority, which caused this refusal to act to become a crime, did not emanate from the statute alone, but required, by legislative direction, the joinder of the council of the municipal corporation, through its ordinance. It was, then under the joint action of the statute and the ordinance that this condition of fact becomes criminal. The continuation of this law making this act a crime depended on the continued joint action of both bodies. Had the legislature repealed its part of the law, the ordinance of council would cease to operate; and as the act, before becoming effective, required the continued action of the municipal corporation, its withdrawal rendered ineffective the statute. In other words, as the action of council was necessary to make this act a crime, the repeal of that action wipes out the crime. It has the same effect as though the offense was declared a misdemeanor entirely by ordinance or entirely by statute. Though the act of assembly specifies what act shall constitute the offense, how it shall be prosecuted, and the penalty for such offense, but it depends upon the affirmative action of the municipal corporation, as directed by the act, to bring these conditions within the sphere of an active rule of law. It is error to say the offense charged was the violation of an act of assembly and the penalty incurred was under that act. It was under both the act and the ordinance. When this appeal would be heard in the Court of Quarter Sessions, it necessarily

must be a proceeding de novo, and as such, the prosecution would have no ordinance then in existence to support it.   There is no vested right in the Commonwealth, existing after the repeal of a criminal statute, to prosecute an offense in existence prior to the repeal of such statute.   It is unnecessary to cite authority as to the effect of the repeal of a criminal statute on pending proceedings.   It is well settled that all proceedings which have not been determined by final judgment, are wiped out by a repeal of the act under which the prosecution for the offense took place.

The assignments of error are overruled and the judgment is affirmed at the cost of the appellant.