337 A.2d 885

**In the Matter of Paul A. DANDRIDGE,
Judge of the Court of Common Pleas
of Philadelphia County.**

Supreme Court of Pennsylvania.

Argued March 14, 1975.

Decided May 13, 1975.

68

Dilworth, Paxson, Kalish, Levy & Coleman, William T. Coleman, Jr., Steven L. Friedman, Philadelphia, for respondent.

Michael vonMoschzisker, Deputy Atty. Gen., Eastern Regional Dir., Richard E. McDevitt, Philadelphia, for the Board.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

JONES, Chief Justice.

The Judicial Inquiry and Review Board instituted formal proceedings against Judge Paul A. Dandridge by written notice served on June 3, 1974, charging the Judge as follows:

"It is charged that PAUL A. DANDRIDGE, Judge of the Court of Common Pleas of Philadelphia County, has violated the Constitution of Pennsylvania, Article V, Section 17(b), as follows:

'Justices and judges shall not engage in any activity prohibited by law and shall not violate any canon of legal or judicial ethics prescribed by the Supreme Court. . . .'

IN THAT PAUL A. DANDRIDGE, on or about December 6, 1972, accepted the net proceeds from a testimonial dinner in his honor for his own personal use, in violation of Paragraph 32 of the Canons of Judicial Ethics in effect at that time, which provided that:

'A judge should not accept any presents or favors from litigants, or from lawyers practising before him or from others whose interests are likely to be submitted to him for judgment',

and it is further charged that his conduct in accepting such monies gives the appearance of impropriety."

"WHEREFORE, said PAUL A. DANDRIDGE is subject to discipline, suspension or removal from office pursuant to Article V, Section 18(d) of the Pennsylvania Constitution."

A hearing on the matter was conducted on June 19, 1974, before a panel of three members of the Board. On September 3, 1974, the full Board, consisting of nine members, issued its Report. The Board concluded that the charges against Judge Dandridge were proven and recommended that Judge Dandridge be privately admonished and that, within a reasonable time, Judge Dandridge should turn over to the Commonwealth an amount [1] equal to the monies received by Judge Dandridge after the testimonial dinner given in his honor. The Board stated that it reached its conclusions and recommendations in spite of Judge Dandridge's "exemplary service as a trial judge . . . his noteworthy efforts in civic activities, and . . . his excellent reputation for judicial temperament and integrity," and in spite of what the Board described as "the unfortunate and improper practice which apparently exists in Philadelphia County of some judges retaining proceeds from dinners held in their honor."

After argument before the entire Board on October 22, 1974, the Board issued a final order on November 25, 1974, affirming its prior Report. On December 19, 1974, before Judge Dandridge's thirty-day period for appeal expired under Rule 17 of the Rules of Procedure Governing the Judicial Inquiry and Review Board, this Court issued an Order adopting the recommendations of the Board. On December 20, 1974, a Petition to Vacate the Order of December 19, 1974, and a Petition Pursuant to Rule 17 of the Rules of Procedure Governing the Judicial Inquiry and Review Board were filed with this Court on behalf of Judge Dandridge.

On January 10, 1975, this Court issued an Order that the two petitions be held under advisement and that attorneys for Judge Dandridge and the counsel assigned by

1. That amount is $23,500.00, which sum, the Board found, "was in no sense a token or memorial gift such as is usually given at dinners or other occasions honoring individuals."

the Attorney General under Rule 5(a) of the Judicial Inquiry and Review Board were to file briefs.

Upon consideration of the briefs and the oral argument held March 14, 1975, we hereby vacate our Order of December 19, 1974, as having been entered prematurely. Upon consideration of the entire proceedings however, we are convinced that Judge Dandridge has not been denied his constitutional rights and we are confident that the findings of fact, conclusions and recommendations of the Board in this matter are just and proper.

I

It is urged on Judge Dandridge's behalf that he was charged only with a violation of Canon 32 of the Canons of Judicial Ethics [2] which Canons were in existence at the time the allegedly improper conduct took place but which were repealed and superseded by the Code of Judicial Conduct adopted by this Court on November 21, 1973, effective January 1, 1974. There was no saving clause provision in the November 21, 1973, order. Counsel for Judge Dandridge argues that the charges should be dismissed as having no basis in authority.

The answer to this argument is that the charges were not simply restricted to a violation of Canon 32. It was also charged:

"that his conduct in accepting such monies gives the appearance of impropriety." (*See* charge, *supra* p. 886).

2. The Canons of Judicial Ethics were adopted by this Court on February 11, 1965, and are reported at 425 Pa. xxiii–xxxvi.
Canon 32 read:
"A judge should not accept any presents or favors from litigants, or from lawyers practicing before him or from others whose interests are likely to be submitted to him for judgment."

This language was tantamount to a charge of violation of Canon 4 [3] of the now repealed Canons of Judicial Ethics. Judge Dandridge and the dissenting opinion of Justice Nix seem to say that because the words "Canon 4" are not in the charge, due process is violated by the finding that he gave the appearance of impropriety. Failure to cite in the Notice any specific Canon or Rule does not render the Notice vague. Rule of Procedure 2(b) of the Board merely requires this:

"The notice shall specify *in ordinary and concise language* the charges against the judge and the alleged facts upon which such charges are based, and shall advise the judge of his right to file a written answer to the charges against him within twenty (20) days after service of the notice upon him." (Emphasis added).

Even a criminal indictment that fails to include a statutory citation will stand. *Commonwealth ex rel. Robinson v. Baldi*, 175 Pa.Super. 550, 106 A.2d 689, 690–91 (1954). *See* Pa.R.Crim. 213(b), 19 P.S. Appendix.

Furthermore, even though Canons 4 and 32 have been repealed, there is no dispute about the fact that these Canons were in effect at the time when the dinner was held and when Judge Dandridge received the money. And the standards which proscribed that conduct are carried forward without interruption to this day by the Code of Judicial Conduct. The proscriptions of old Canon 4 regulating the appearances of impropriety are now entirely embodied within the language of the new Canon 2:

"A Judge Should Avoid Impropriety and the Appearance of Impropriety in All His Activities."

3. Canon 4:
   "A judge's official conduct should be free from impropriety and the appearance of impropriety; he should avoid infractions of law; and his personal behavior, not only upon the Bench and in the performance of judicial duties, but also in his everyday life, should be beyond reproach."

Although the language of Canon 32 does not survive in the new Code, the earlier prohibition against accepting improper gifts is encompassed in the language of new Canon 5, subd. C(1):

"A judge should refrain from financial and business dealings that tend to reflect adversely on his impartiality, interfere with the proper performance of his judicial duties, exploit his judicial position, or involve him in frequent transactions with lawyers or persons likely to come before the court on which he serves."

More persuasively, the present Canon 2 was clearly intended to carry forward the proscription of old Canon 32 as applied to a matter such as the evidence discloses in this case. The Reporter's Notes to the current American Bar Association Code of Judicial Conduct, in discussing Canon 5C(4)(a) (not adopted by this Court, but which permits accepting a gift incident to a public testimonial) say:

"In subsection (4)(a) the Committee identified several types of gifts that, as a matter of common sense and in deference to common usage, are made exceptions to the literal language of the general prohibition. A judge is allowed to accept a gift incident to a public testimonial to him, books supplied without cost to him for official use, and an invitation to him and his spouse to attend without cost a bar-related function or activity devoted to the improvement of the law, the legal system, or the administration of justice. *The judge must keep in mind, however, that the standard of impropriety and the appearance of impropriety in Canon 2 is applicable to this area of his conduct. Therefore, the circumstances surrounding each gift that falls within (4)(a) must be considered to determine if the requirement of Canon 2 is met.* (Emphasis supplied).

## II

██ The repeal of any statute providing for criminal sanctions removes the authority for proceedings based on alleged violations of the statute in question. *Genkinger v. Conam,* 32 Pa. 99 (1858); *Commonwealth v. Gross,* 145 Pa.Super. 92, 21 A.2d 238 (1941); *Commonwealth v. Beattie,* 93 Pa.Super. 404 (1928); *Scranton City v. Rose,* 60 Pa.Super. 458 (1915). As the Supreme Court of the United States has recognized:

> ". . . [W]hen the legislature repeals a criminal statute or otherwise removes the State's condemnation from conduct that was formerly deemed criminal, this action requires the dismissal of a pending criminal proceeding charging such conduct."

*Bell v. Maryland,* 378 U.S. 226, 230, 84 S.Ct. 1814, 1817, 12 L.Ed.2d 822 (1964).

██ But, assuming arguendo that Judge Dandridge is entitled to the full complement of constitutional rights which would be available in a criminal proceeding,[4] these authorities are of no help to him. His argument and the dissenting opinion fail to recognize that, even though a statute is repealed, if some or all of its provisions are reenacted so that the conduct prohibited in the first statute remains censured by the re-enactment, there is nothing which interferes with the power of the State to prosecute the matter without interruption. *Commonwealth v. Beattie, supra.*[5] In this case, the improper conduct of accepting a large gift from lawyers and potential litigants was clearly forbidden by the terms of the Canons of Ju-

---

**4.** A disciplinary proceeding such as this is constitutionality labeled as "quasi-criminal" (In re: Ruffalo, 390 U.S. 544, 551, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968)). There is no requirement however to grant the full panoply of constitutional rights available to a criminal defendant.

**5.** *Cf.* Section 2 of the Statutory Construction Act of 1970, P.L. 707, No. 230, as amended by act of December 6, 1972, P.L. 1339, No. 290, 1 Pa.S. § 1962.

dicial Ethics which were in effect at the time the violation occurred. Judge Dandridge had unequivocal notice that such conduct was a violation. The new Code of Judicial Conduct, in broader terms, censures the very same conduct. And there was no lapse which would render null and void the proceedings of the Judicial Inquiry and Review Board.

## III

■  Finally, we feel compelled to address Judge Dandridge's complaint that he has been "prosecuted" discriminatively in light of the fact that a practice allegedly exists among some Philadelphia judges to retain testimonial dinner proceeds. The Recommendations of the Board made mention of this practice. Such practice has been specifically condemned at least since the adoption by this Court of the Canons of Judicial Ethics in 1965. Furthermore, those Canons had been adopted by the Pennsylvania Bar Association in 1949. Ignorance of the Canons and misconduct by others are no defense. There is no evidence in this record that the Judicial Inquiry and Review Board has turned its head on specific violations by other judges or that any particular instances were brought to its attention. And the record is equally barren of any suggestion that Judge Dandridge was singled out by the Board; that he is a "scapegoat." If discrimination was to be established, Judge Dandridge had the burden of placing the appropriate evidence on the record.

Accordingly, it is hereby ordered:

1. That the Order of this Court, entered December 19, 1974, at Judicial Inquiry and Review Board Docket 47, having been entered prematurely, the said order is hereby vacated;

2. That the findings of fact, conclusions and recommendations of the Board in this matter be and hereby are adopted as being just and proper;

3. That the Board is hereby authorized, in accordance with its recommendation, "to admonish Paul A. Dandridge concerning his conduct in accepting the proceeds of a testimonial dinner for his own personal use;"

4. That on or before June 15, 1975, Judge Dandridge transfer and pay over to the Commonwealth of Pennsylvania for its use the sum of twenty-three thousand, five hundred ($23,500.00) dollars, being an amount equal to the proceeds of said testimonial dinner which Judge Dandridge had accepted.

NIX, J., filed a dissenting opinion.

MANDERINO, J., dissents.

NIX, Justice (dissenting).

The majority opinion after confessing error in prematurely issuing the initial Order of this Court of December 19, 1974, proceeds · by employing tortuous and strained reasoning to reach a result that compounds its original mistake. The benefit of oral argument, further study of the briefs, and the cases cited therein force me to conclude that my vote in support of the December 19, 1974 Order was in error and occasion this dissent.

To support its ultimate conclusion that the recommendations of the Judicial Inquiry and Review Board should be adopted the majority offers several bases, all of which I believe are fallacious. First, the majority argues that the language of the formal charge served upon Judge Dandridge included an averment of a violation of former Canon 4 [1] in addition to a violation of the now repealed

1. Canon 4 of the Canons of Judicial Ethics adopted by this Court on February 11, 1965 provided.
   "A judge's official conduct should be free from impropriety and the appearance of impropriety: he should avoid infractions of law; and his personal behavior, not only upon the Bench and in the performance of judicial duties, but also in his everyday life, should be beyond reproach."
   The former Code has been supplanted by the new Code of Judicial Conduct adopted November 21, 1973 and made effective January 1, 1974.

Canon 32. The clear and unambiguous language of the charge refutes this contention.[2] I agree with the majority's observation that a charge need not necessarily identify an alleged canon violation by its number. However, due process at the very least demands that an accused be supplied with fair notice and knowledge of the precise nature of the charges that have been leveled.

In *In re Oliver*, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948), the United States Supreme Court observed:

"We further hold that failure to afford the petitioner a reasonable opportunity to defend himself against the charge of false and evasive swearing was a denial of due process of law. A person's right to reasonable notice of a charge against him, and an opportunity to be heard in his defense—a right to his day in court— are basic in our system of jurisprudence; . . . ." Id. at 273, 68 S.Ct. at 507.

It is equally significant that the Court, in *Oliver, supra*, rejected a distinction offered by the State of Michigan that this was not a classic criminal case but rather a proceeding before an investigating grand jury. Further,

2. Judge Dandridge was served with written notice which provided:

"It is charged that PAUL A. DANDRIDGE, Judge of the Court of Common Pleas of Philadelphia County, has violated the Constitution of Pennsylvania, Article V, Section 17(b), as follows:

'Justices and judges shall not engage in any activity prohibited by law and shall not violate any canon of legal or judicial ethics prescribed by the Supreme Court. . . .'

IN THAT PAUL A DANDRIDGE, on or about December 6, 1972, accepted the net proceeds from a testimonial dinner in his honor for his own personal use, in violation of Paragraph 32 of the Canons of Judicial Ethics in effect at that time, which provided that:

'A judge should not accept any presents or favors from litigants, or from lawyers practicing before him or from others whose interests are likely to be submitted to him for judgment', and it is further charged that his conduct in accepting such monies gives the appearance of impropriety.

WHEREFORE, said PAUL A. DANDRIDGE, is subject to discipline, suspension or removal from office pursuant to Article V, Section 18(d) of the Pennsylvania Constitution."

the United States Supreme Court resolved any doubt as to the applicability of these principles to the instant cause by applying these standards to a disbarment proceeding. *In the Matter of John Ruffalo*, 390 U.S. 544, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968) that Court stated:

"These are adversary proceedings of a quasi-criminal nature. Cf. *In re Gault*, 387 U.S. 1, 33, 87 S.Ct. 1428, 1446, 18 L.Ed.2d 527 [, 549]. The charge must be known before the proceedings commence. They become a trap when, after they are underway, the charges are amended on the basis of testimony of the accused. He can then be given no opportunity to expunge the earlier statements and start afresh.

How the charge would have been met had it been originally included in those leveled against petitioner by the Ohio Board of Commissioners on Grievances and Discipline no one knows.

This absence of fair notice as to the breach of the grievance procedure and the precise nature of the charges deprive petitioner of procedural due process." (footnote omitted) Id. at 551–52, 88 S.Ct. at 1226.

A review of this record forces the view that Judge Dandridge was reasonably led to believe that he was required to respond only to a violation of Canon 32. Today's belated attempt by the majority to support its findings based on other grounds offends due process. See, generally, *In re Ruffalo, supra.*

Judge Dandridge was first notified that he was the subject of investigation by a letter dated May 22, 1974 from the Executive Director of the Judicial Inquiry and Review Board. He was specifically advised in that correspondence that his conduct with reference to the testimonial dinner in question was being scrutinized as to possible violations of Canons 4 and 32. Additionally the letter set forth each canon in full. However, when the actual charges were preferred, the violation of Article V, Section 17(b) which expressly covers canon violations

was clearly limited in scope to a violation of Canon 32. This Canon was not only referred to by number but was quoted in full therein.[3]

While in my judgment the preceding facts would have justified the conclusion that the only charge to be met was that of an alleged violation of Canon 32, the record of the hearing reflects that counsel for Judge Dandridge, out of an abundance of caution, made repeated efforts to establish conclusively that the only charge then pending was a Canon 32 violation. If this in fact was not also the opinion of counsel for the Board and the members of the Board present at the hearings, no one attempted to disabuse Mr. Coleman of his now alleged misconception.

At the hearings on June 19, 1974, and October 22, 1974, the following colloquy occurred:

"MR. von MOSCHIZISKER: May the record show the document (charge, as quoted earlier) I referred to has been seen by Mr. Coleman?__

.MR. COLEMAN: That is the charge that the Judge is here to meet, and no other charge. That is what I want to clear up.

JUDGE HOFFMAN: That is the only charge I am acquainted with. If there are any other charges, we members of the Board are not aware of them. That is the matter that we are hearing today.

MR. von MOSCHIZISKER: May the record show I offer Commission's Exhibit 1 in evidence for the limited purpose of establishing what the charge is, and what the only charge is?

MR. COLEMAN: Yes.

JUDGE HOFFMAN: It may be received.

3. While, concededly, disciplinary action may be instituted for conduct other than specific canon violations under Article 5, § 18(d), e. g. misconduct in office, neglect of duty, failure to perform duties or conduct which prejudices the proper administration of justice, it is equally as clear that specific canon violations are appropriately listed as violations under Article 5, § 17(b).

80

MR. COLEMAN: I object to No. 5, Your Honor.

MR. von MOSCHIZISKER: I only offer it so 4 can be understood, not as substantive evidence.

MR. COLEMAN: I want to keep the record straight. You recall I specifically asked at the beginning of these hearings I asked what is the charge. The document was introduced and when you read that, you will find that the only Canon cited is Canon 32. This letter also deals with Canon 4. I think it is quite significant that when the letter went to Judge Dandridge on May 22, 1974, saying that there was an investigation with respect to Canon 32 and Canon 4, that when your Board got around to issuing the charge, it issued the charge only on 32. I want to make it quite clear, and that is the reason I am objecting.

MR. von MOSCHIZISKER: I am offering it only in aid of interpreting the declaration by the Judge in Exhibit 4. I am not offering Exhibit 5 to prove any substantive facts.

JUDGE HOFFMAN: For that limited purpose we will have it admitted.

MR. COLEMAN: . . . Now then at that time which is your Docket 47, the only Canon cited with which he is being charged with, is the Canon 32. There is nothing in there about Canon 4; that drops out.

Secondly, the other thing cited is the Constitution of Pennsylvania, which merely said that Justices cannot engage in anything that is in violation of a Canon.

But obviously, you have to point to the Canon. At the beginning of a hearing, I raised this question and I said, I take it we're here with respect to what is in the charging letter.

Judge Hoffman said that's correct. That is only Canon 32; there was nothing about Canon 4."

In my view it is therefore clear that all parties were content to proceed under the one allegation, i. e. a violation of Canon 32. Due process would be offended by an attempt at this late date, after the record has been closed, to justify censure based upon any other grounds.

Next, Judge Dandridge contends that the charge under Canon 32 must be dismissed because, although the conduct occurred while Canon 32 was in effect, the charge was not brought until Canon 32 had been repealed without a saving clause. I agree.

The majority attempts to argue that the proscriptions of former Canon 32 have been carried forward under the New Judicial Code of Ethics. To support this claim it relies upon the Reporter's Notes to a Canon in the Code of Judicial Conduct recommended by the American Bar Association *which were rejected by this Court.* See, Comment, Canon 5c(4)(a).

Further, where language in a subsequent statute is viewed as carrying over the proscriptions of a former enactment, it is necessary that the language of the latter act clearly manifests the intent to perpetuate the former provision. This intent of the drafters can only be found where either the subsequent provision re-enacts the exact language of the former act or contains language so similar as to justify the inference that such an intention existed. See, generally, *Commonwealth v. Beattie,* 93 Pa. Super. 404, 413, 414 (1928) (where the new language was characterized as "almost in ipsissimis verbis," id. at 414.)

While the subject matter of the new Canons 2 and 5 subd. C(1) touches upon the same general area (as do most of the canon provisions), there is not that similarity between former Canon 32 and Canons 2 and 5, subd. C(1) of the new code which would justify the finding of the exception to the general axiom that repealed rules are inoperative and cannot provide a basis for subsequent proceedings.

In *Genkinger v. Commonwealth,* 32 Pa. 99 (1858), the Supreme Court stated that where the statute charged is repealed pending the proceedings the court is without the power to conclude the proceedings. Similarly in *Scranton City v. Rose,* 60 Pa.Super. 458, 462 (1915), the Superior Court stated that "[i]t is well settled that all proceedings which have not been determined by final judgment, are wiped out by a repeal of the act under which the prosecution for the offense took place." This is because "there [is] no offense . . . for . . . [which] to punish." *Commonwealth v. Gross,* 145 Pa. Super. 92, 99, 21 A.2d 238, 241 (1941). "The repealed statute, in regard to its operative effect, is considered as if it had never existed except as to matters and prosecutions past and closed." *Commonwealth v. Beattie, supra,* 93 Pa.Super. at 412 (1928).

Although these cases are criminal, undoubtedly this principle is equally applicable to judicial disciplinary proceedings. Indeed the United States Supreme Court has labeled disbarment proceedings "quasi-criminal." *Ruffalo, supra* 390 U.S. at 551, 88 S.Ct. 1222. See also, *In re Greenberg,* 457 Pa. 33, 318 A.2d 740 (1974) (Concurring Opinion, Nix, J. at 457 Pa. 45, 318 A.2d 740.)

Accordingly, the power of the Board to proceed under Canon 32 no longer existed at the time the charge was instituted, thus there is no basis for the censure the majority now seeks to impose. I therefore dissent.