**COMMONWEALTH of Pennsylvania,**
**Appellee**

**v.**

**Joseph DERHAMMER, Appellant.**

Superior Court of Pennsylvania.

Submitted Oct. 19, 2015.
Filed Feb. 16, 2016.

Janan M. Tallo, Wilkes–Barre, for appellant.

James L. McMonagle, Assistant District Attorney, Wilkes–Barre, for Commonwealth, appellee.

BEFORE: BOWES, PANELLA, and PLATT,* JJ.

OPINION BY BOWES, J.:

Joseph Derhammer appeals from the judgment of sentence of four to eight years incarceration imposed by the court after it found him guilty of failing to comply with sex offender registration pursuant to former 18 Pa.C.S. § 4915. After careful review, we affirm.

* Retired Senior Judge assigned to the Superior Court.

Appellant pled guilty in June of 1995 to involuntary deviate sexual intercourse and was sentenced to five to ten years incarceration. *See* CP–40–MD–439–1995. As a result, Appellant was required to register for life as a sex offender. On April 13, 2009, a fire at the home of Nancy Kostelnick and her daughter resulted in their deaths. An investigation ensued that determined that the fire was the result of arson.[1] As part of the investigation, police learned that Appellant had been in a romantic relationship with Nancy Kostelnick and had resided at the home. However, police discovered that Appellant was evicted after an argument with Nancy Kostelnick and no longer lived at the home as of April 1, 2009. Appellant had reported a new address to Pennsylvania State Police on April 6, 2009.

The Commonwealth charged Appellant on January 10, 2010, with failing to register as a sex offender under 18 Pa.C.S. § 4915. At that time, Appellant was subject to registration pursuant to 42 Pa.C.S. § 9795.1(b)(2) and 42 Pa.C.S. § 9795.2, provisions that were part of Megan's Law III and, prior to that, part of Megan's Law II. The version of Megan's Law III then in effect required a person to inform Pennsylvania State Police of a change in address within forty-eight hours. *See* former 42 Pa.C.S. § 9795.2(a)(2)(i) (2012).[2]

On July 6, 2010, the Commonwealth filed its criminal information, which set forth that Appellant, "an individual subject to registration under 42 Pa.C.S. [§§ ] 9795.2(b)(1), (2) or (3), knowingly failed to register with the Pennsylvania State Police

as required under 42 Pa.C.S. [§§ ] 9795.2 (relating to registration procedures and applicability) in violation of Section 4915(a)(1) of the Pennsylvania Crimes Code (Section 4915 effective January 24, 2005), 18 Pa.C.S.A. Section 4915(a)(1)." Criminal Information, 7/6/10. Appellant proceeded to a bench trial on March 3, 2011. The court found Appellant guilty and sentenced him on April 20, 2011, to three years and four months to six years and eight months incarceration. Appellant failed to file a direct appeal, but timely sought post-conviction relief under the Post–Conviction Relief Act ("PCRA"). The PCRA court reinstated Appellant's appellate rights.

This Court, with the agreement of the Commonwealth, on January 7, 2014, reversed Appellant's judgment of sentence and remanded for a new trial because he had not been given an adequate colloquy regarding the waiver of his jury trial rights. In the meantime, Megan's Law III and 18 Pa.C.S. § 4915 expired on December 20, 2012. Megan's Law III was replaced on that same date by the Sexual Offender Registration and Notification Act ("SORNA"). The General Assembly also passed 18 Pa.C.S. § 4915.1 on December 20, 2011, which substantially re-enacted and replaced 18 Pa.C.S. § 4915 and became effective December 20, 2012. Act 2011–111 (S.B. 1183), P.L. 446.

Prior to Appellant's retrial, the Pennsylvania Supreme Court, on December 16, 2013, decided *Commonwealth v. Neiman*, 624 Pa. 53, 84 A.3d 603 (2013). Therein, the Pennsylvania Supreme Court declared

---

1. Appellant was ultimately charged with two counts of homicide and one count of arson. Our Supreme Court granted the Commonwealth's allowance of appeal in that case on an interlocutory issue. *See Commonwealth v. Derhammer*, —— Pa. ——, 116 A.3d 601 (2015).

2. The original version of Megan's Law III, Act 2004–152 (S.B. 92), P.L. 1243, gave offenders ten days to report a change in address. That provision was amended in 2006 to give offenders forty-eight hours to report an address change. *See* Act 2006–178 (S.B. 944), P.L. 1567, § 7.

Act 152 of 2004 unconstitutional in its entirety as a violation of the Pennsylvania Constitution's single subject rule. That Act included Megan's Law III and its registration and notification requirements. Additionally, it re-codified the crime for which Appellant was charged under a new Crimes Code provision.

Specifically, 18 Pa.C.S. § 4915 was created by Megan's Law III. The crime existed in a prior form under a separate statute in Megan's Law II. *See* former 42 Pa.C.S. § 9795.2(d)(2) ("An individual subject to registration under Section 9795.1(b)(1), (2), or (3), who fails to register with Pennsylvania State Police as required in this section commits a felony of the first degree and shall be sentenced to a mandatory minimum sentence of probation for the remainder of the individual's lifetime and may be sentenced to a period of incarceration of up to the individual's lifetime."); [3] *see also* former 42 Pa.C.S. § 9795.2(d)(1) ("An individual subject to registration under Section 9795.1(a) who fails to register with the Pennsylvania State Police as required in this section commits a felony of the third degree.").[4]

The *Neiman* Court stayed its decision for ninety days to permit the legislature to take action. In response, the legislature enacted Act 19 of 2014 on March 14, 2014. Act 19 amended Title 42 relative to sex offender registration requirements, but did not address the Crimes Code, which, relevant to this case, had already been amended via the original SORNA.

On August 26, 2014, Appellant filed a motion to dismiss based on *Neiman*. Therein, he argued that the statute under which he was charged was unconstitutionally void and that the substantive crime for which he was charged no longer existed. The trial court heard argument by the parties on September 2, 2014, and denied Appellant's motion. The matter proceeded to a non-jury trial and Appellant stipulated to the entry of the transcript of his first trial as the evidence to be considered by the court.

That evidence revealed that Appellant resided for two to three years at 46 Chester Street, Wilkes Barre, Pennsylvania, with the Kostelnicks. That was his registered address as of April 1, 2009. Thereafter, Appellant lived from April 1, 2009 to April 13, 2009 at another address with a friend. Appellant registered at the new address on April 6, 2009.[5] That friend, Sandra Wickkiser, asked him to find another place to reside after learning that he was required to register as a sex offender. She also called police on April 13, 2009, to inquire about Megan's Law registration and spoke to police regarding Appellant. He also registered a different address on

**3.** The provision quoted above is not the original language of Megan's Law II, but was the result of an amendment in 2000. *See* Act 2000–113 (S.B. 844), P.L. 811, § 2. The original language was, "An individual subject to registration under Section 9795.1(b)(1) or (2) who fails to register with Pennsylvania State Police as required in this section commits a felony of the first degree and shall be sentenced to a mandatory minimum sentence of probation for the remainder of the individual's lifetime and may be sentenced to a period of incarceration of up to the individual's lifetime." Act 2000–18 (S.B. 380), P.L. 74, § 3.

**4.** In *Commonwealth v. Williams*, 574 Pa. 487, 832 A.2d 962, 986 (2003) the Pennsylvania Supreme Court struck down as unconstitutional the penalty provision of 42 Pa.C.S. § 9795.2(d)(2), relative to lifetime probation and potential lifetime incarceration.

**5.** There appears to be a discrepancy regarding Appellant's April 6, 2009 registration. According to police, Appellant registered his address as 141 Park Avenue, Apartment 1–B. Ms. Wickkiser testified that she lived in an apartment at 121 Park Avenue. This discrepancy was not the basis for the charge.

April 14, 2009, after Ms. Wickkiser no longer permitted him to live with her.

The court denied Appellant's renewed request to dismiss the charge based on 18 Pa.C.S. § 4915 being null and void and found him guilty. The court imposed the aforementioned sentence on October 24, 2014. This timely appeal ensued. The trial court directed Appellant to file and serve a Pa.R.A.P.1925(b) concise statement of errors complained of on appeal and Appellant complied. The trial court authored a Rule 1925(a) opinion and the matter is now ready for our review. Appellant's sole contention on appeal is:

> Whether the court erred when it violated the Appellant's right to due process under the United States and Pennsylvania Constitutions by the [sic] denying the Appellant's motion for *habeas corpus* prior to trial and ultimately convicting the Appellant under a statute which was rendered unconstitutional by the Supreme Court of Pennsylvania in *Commonwealth v. Neiman*?

Appellant's brief at 4.

Appellant's issue involves the interplay between Megan's Law II, Megan's Law III, and SORNA in light of our Supreme Court's decision in *Neiman* and our legislature's subsequent remedial action. This is a matter of first impression. As Appellant's issue involves analysis of the application of statutory law, the question is one of law. Thus, our standard of review is *de novo* and our scope of review is plenary. *Commonwealth v. Stotelmyer,* —— Pa. ——, 110 A.3d 146, 149 (2015).

Preliminarily, since it is pertinent to our analysis, we trace the development of sex offender registration law in Pennsylvania. In 1995, the legislature enacted Megan's Law I. *See* Act 1995 Special Session–24 (S.B. 7), P.L. 1079, § 1, approved Oct. 24, 1995.[6] Megan's Law I created two separate classifications: sexually violent predators ("SVP") and other offenders. *See Commonwealth v. Williams,* 557 Pa. 285, 733 A.2d 593, 595 (1999) (*Williams I*).

Megan's Law I presumed an offender was an SVP if the person was convicted of delineated offenses, including: rape, involuntary deviate sexual intercourse, aggravated indecent assault, spousal sexual abuse, and a misdemeanor of the first-degree indecent assault. In addition, a person who committed offenses of kidnapping, promoting prostitution, and crimes relating to obscene and other sexual materials and performances involving minors, where the victim was a minor, was presumed to be an SVP. *See Williams I, supra.*

Under Megan's Law I, prior to sentencing, a member of the Sexual Offenders Assessment Board ("SOAB"), would conduct a review of the case and apply various statutory factors to determine if the individual should be deemed an SVP. The SOAB would then submit a written report within sixty days of the finding of guilt. Thereafter, the court would conduct an SVP hearing to determine if the person should be labeled an SVP. The defendant could rebut the presumption that he was an SVP by clear and convincing evidence.

A person designated an SVP was required to register as a sex offender for life, unless a court determined that the individual was no longer an SVP. *Williams I, supra* at 596. In contrast, non-SVP of-

---

**6.** New Jersey was the first state to enact a comprehensive sex offender registration law after the abduction, murder and rape of seven-year-old Megan Kanka. *Commonwealth v. Williams,* 557 Pa. 285, 733 A.2d 593, 593 (1999). Thereafter, the federal government passed legislation that conditioned federal funds to states on the passage of sex offender registration laws. Accordingly, as of May of 1996, forty-nine states had adopted some form of Megan's Law. *Id.*

fenders were required to register for a period of ten years. Failure to register by a non-SVP was a felony of the third degree. However, if an SVP failed to register, he was subject to mandatory lifetime probation or potential life imprisonment. Whenever an offender changed his address, he was required to notify state police within ten days. *See* former 42 Pa. C.S. § 9759.2(a)(2); Act 2000–18 (S.B. 380), P.L. 74, § 3.

The *Williams I* Court found unconstitutional the presumption that a person committing an enumerated offense was an SVP. Accordingly, the General Assembly enacted Megan's Law II. *See* Act 2000–18 (S.B. 380), P.L. 74, § 3. Megan's Law II shifted the burden of proof at an SVP hearing from the defendant to the Commonwealth. *Commonwealth v. Howe*, 842 A.2d 436, 439 n. 1 (Pa.Super.2004). Thus, the Commonwealth was required to establish by clearing and convincing evidence that the individual was an SVP. Additionally, Megan's Law II changed the two-tiered classification system of Megan's Law I. Megan's Law II created three separate offender categories: SVP, non-SVP lifetime reporter, and non-SVP ten-year reporter. *See Commonwealth v. Wilson*, 589 Pa. 559, 910 A.2d 10, 13 (2006).

An offender deemed to be an SVP was required to register as a sex offender for life. Similarly, a conviction for certain delineated offenses required lifetime registration irrespective of SVP status. *See* former 42 Pa.C.S. § 9795.1(b)(2) (2012). Individuals not determined to be an SVP, who committed lesser offenses, had to register for ten years. *See Wilson, supra* at 13. A non-SVP offender who failed to register committed a third-degree felony. The original penalty for failing to register for one classified as an SVP remained a mandatory lifetime probation sentence and the individual could be sentenced to a period of incarceration up to life. *See* Act 2000–18 (S.B. 380), P.L. 74, § 3; *see also* Act 2000–113 (S.B. 844), P.L. 811, § 2 (amending Megan's Law II).

As noted *supra* in footnote 4, the Supreme Court in *Commonwealth v. Williams*, 574 Pa. 487, 832 A.2d 962, 986 (2003) ("*Williams II*"), struck down the mandatory lifetime probation and potential lifetime incarceration portion of Megan's Law II, relating to failing to register. It severed those provisions from the remainder of the Megan's Law II statute. Soon thereafter, the legislature enacted Act 152 of 2004, the original version of Megan's Law III. That Act moved the crime and punishment provisions of Megan's Law II, regarding failing to register, to the Crimes Code by creating 18 Pa.C.S. § 4915. The original version of 18 Pa.C.S. § 4915 provided, in relevant part:

> **(a) Offense defined.**—An individual who is subject to registration under 42 Pa.C.S. § 9795(a) (relating to registration) or an individual who is subject to registration under 42 Pa.C.S. § 9795.1(b)(1), (2) or (3) commits an offense if he knowingly fails to:
>
> (1) register with the Pennsylvania State Police as required under 42 Pa.C.S. § 9795.2 (relating to registration procedures and applicability);
>
> . . . .
>
> **(c) Grading for sexually violent predators and others with lifetime registration.**—
>
> (1) Except as provided in paragraph (2), an individual subject to registration under 42 Pa.C.S. § 9795.1(b)(1), (2) or (3) who violates subsection (a)(1) or (2) commits a misdemeanor of the second degree.
>
> (2) An individual subject to registration under 42 Pa.C.S. § 9795.1(b)(1), (2) or (3) who violates subsection

(a)(1) or (2) and who has previously been convicted of an offense under subsection (a)(1) or (2) or a similar offense commits a misdemeanor of the first degree.

(3) An individual subject to registration under 42 Pa.C.S. § 9795.1(b)(1), (2) or (3) who commits a violation of subsection (a)(1) or (2) and who has previously been convicted of two or more offenses under subsection (a)(1) or (2) or a similar offense commits a felony of the third degree.

Act 2004–152 (S.B. 92), P.L. 1243, § 8. Thus, Megan's Law III initially decreased the grading of an offense for those similarly situated to Appellant who failed to register. The legislature amended this law in 2006. The 2006 law changed the grading of the failing to register offense and decreased the number of days to report a change of address from ten to two days. *See* Act 2006–178 (S.B. 944), P.L. 1567, § 7.

Relevant to Appellant, the grading of a reporting offense became a felony of the second degree.[7] *Id.* ("Except as set forth in paragraph (3), an individual subject to registration under 42 Pa.C.S. § 9795.1(b)(1), (2) or (3) who commits a violation of subsection (a)(1) or (2) commits a felony of the second degree."); *see also* former 18 Pa.C.S. § 4915(c)(2) (2012) ("Except as set forth in paragraph (3), an individual subject to registration under 42 Pa. C.S. § 9795.1(b) or former 42 Pa.C.S. § 9793 and who is subject to lifetime registration who commits a violation of subsection (a)(1) or (2) commits a felony of the second degree.").

After Appellant was charged in this matter, on December 20, 2011, the legislature

passed Act 2011–111 (S.B. 1183), P.L. 446. That enactment was the original SORNA legislation. The legislature promulgated SORNA to comply with the federal Adam Walsh Child Protection and Safety Act, 42 U.S.C. § 16901 *et seq.* SORNA was intended to replace Megan's Law III and substituted 18 Pa.C.S. § 4915.1 for 18 Pa. C.S. § 4915. SORNA and 18 Pa.C.S. § 4915.1 became effective December 20, 2012.

SORNA also created a three-tiered classification of sex offenders and retroactively increased registration requirements for various offenses. It mandates a fifteen-year-period of registration for Tier–I offenders. *See* 42 Pa.C.S. § 9799.15(a)(1). Tier–II offenders must register for twenty-five years. 42 Pa.C.S. § 9799.15(a)(2). Lifetime registration is required for Tier–III offenders. 42 Pa.C.S. § 9799.15(a)(3). Section 4915.1 delineated the crime for failing to register. That criminal statute reads, in salient part,

**§ 4915.1. Failure to comply with registration requirements.**

**(a) Offense defined.—**

An individual who is subject to registration under 42 Pa.C.S. § 9799.13 (relating to applicability) commits an offense if he knowingly fails to:

(1) register with the Pennsylvania State Police as required under 42 Pa.C.S. § 9799.15 (relating to period of registration), 9799.19 (relating to initial registration) or 9799.25 (relating to verification by sexual offenders and Pennsylvania State Police);

(2) verify his address or be photographed as required under 42 Pa. C.S. § 9799.15, 9799.19 or 9799.25; or

---

**7.** We note that the criminal information in this matter set forth that Appellant's violation

was a felony of the second degree.

(3) provide accurate information when registering under 42 Pa.C.S. § 9799.15, 9799.19 or 9799.25.

. . . .

**(c) Grading for sexual offenders who must register for 25 years or life.**

(1) Except as set forth in paragraph (3), an individual subject to registration under 42 Pa.C.S. § 9799.13 and required to register for a period of 25 years or life who commits a violation of subsection (a)(1) or (2) commits a felony of the second degree.

(2) An individual subject to registration under 42 Pa.C.S. § 9799.13 and required to register for a period of 25 years or life who commits a violation of subsection (a)(1) or (2) and who has previously been convicted of an offense under subsection (a)(1) or (2) or (a.1)(1) or (2) or a similar offense commits a felony of the first degree.

(3) An individual subject to registration under 42 Pa.C.S. § 9799.13 and required to register for a period of 25 years or life who violates subsection (a)(3) commits a felony of the first degree.

18 Pa.C.S. § 4915.1; *see also* 42 Pa.C.S. § 9799.21 (cross-referencing 18 Pa.C.S. § 4915.1).

After the enactment of SORNA and 18 Pa.C.S. § 4915.1, the *Neiman* Court struck down the original version of Megan's Law III, but stayed its decision until March 17, 2014. The legislature enacted Act 19 of 2014 on March 14, 2014. Pertinent to this case, that Act provided that "An individual who: (i) was required to register with the Pennsylvania State Police pursuant to this subchapter prior to December 20, 2012, and who had not fulfilled the individual's period of registration as of December 20, 2012[,]" was still required to register as a sex offender. Act of Mar. 14, 2014, P.L. 41, No. 19 ("Act 19"). It also provided that individuals under the supervision of the Pennsylvania Board of Probation and Parole or county probation or parole, during the period of January 23, 2005, and December 19, 2012, as a result of a conviction for a sexually violent offense, were still to register. Thus, Act 19 intended to close any loopholes created by the *Neiman* decision. Act 19 did not amend 18 Pa.C.S. § 4915.1 or re-enact 18 Pa.C.S. § 4915.

Appellant argues that his federal and Pennsylvania due process rights were violated because he was found guilty under 18 Pa.C.S. § 4915, a statute ruled unconstitutional by *Neiman*. He acknowledges that the *Neiman* Court stayed its decision for ninety days to permit the legislature to re-enact various portions of Act 152 of 2004. As noted, the legislature passed Act 19 in response. Appellant contends that Act 19 did not re-enact 18 Pa.C.S. § 4915. He notes, and the Commonwealth acknowledges, that this Court decided the same issue in an unpublished decision, *Commonwealth v. Myers*, 1295 MDA 2014, 2015 PA Super Unpubl. LEXIS 2454,[8] and ruled that the conviction therein was invalid based on *Ex parte Siebold*, 100 U.S. 371, 25 L.Ed. 717 (1879).

*Siebold* involved a constitutional challenge to Congress' authority to pass the criminal laws at issue therein. There, the defendants were judges of elections at various precincts in Baltimore, Maryland, who were charged with violating federal law. The defendants alleged that Congress lacked constitutional power to promulgate the laws in question and petitioned for

---

8. Our published internal operating procedures currently preclude parties from relying on unpublished memorandum decisions from this Court in such a manner. Pennsylvania Superior Court IOP § 65.37.

discharge via a writ of habeas corpus. The Supreme Court disagreed that Congress could not have enacted the laws at issue, but in discussing its jurisdiction asserted,

> The validity of the judgments is assailed on the ground that the acts of Congress under which the indictments were found are unconstitutional. If this position is well taken, it affects the foundation of the whole proceedings. An unconstitutional law is void, and is as no law. An offence created by it is not a crime. A conviction under it is not merely erroneous, but is illegal and void[.]

*Siebold, supra* at 376. Appellant posits that § 4915 was void and therefore his conviction was illegal. He also submits that the trial court's conclusion that Section 4915 retained its viability because Act 19 maintained registration requirements for sex offenders, such as himself, is erroneous.

Appellant further contends that the Commonwealth's argument that Appellant could be prosecuted under 18 Pa.C.S. § 4915.1, misses the mark. Appellant points out that he was tried and convicted of violating 18 Pa.C.S. § 4915 after the *Neiman* decision and that the Commonwealth failed to amend its information or seek a conviction under 18 Pa.C.S. § 4915.1. He also counters the Commonwealth's position that he was guilty of failing to register under Megan's Law II. In this respect, he echoes the unpublished decision in *Myers* and contends that this would result in his conviction being elevated from a second-degree felony to a first-degree felony.

The Commonwealth advances two arguments in support of the trial court's ruling. First, it argues that Act 19 closed any gap in potential criminal liability by the *Neiman* decision. It highlights that Megan's Law III was not invalidated by *Neiman*

until March 17, 2014. Prior to that date, the General Assembly passed Act 19, which provided that sex offender registration was still required for those in Appellant's situation. *See* Act 19, *supra* (amending 42 Pa.C.S. § 9799.13(3)). Since Appellant did not register in a timely fashion in April of 2009, it submits that Appellant was "subject to being charged under 18 Pa.C.S. § 4915.1(a)(3), which is what he was actually charged with and found guilty of." Commonwealth's brief at 8. In this regard, it relies on *Commonwealth v. Beattie*, 93 Pa.Super. 404 (1928), and *In re Dandridge*, 462 Pa. 67, 337 A.2d 885 (1975).

In *Beattie*, the defendant was found guilty and sentenced for operating a motor vehicle while under the influence of intoxicating liquor. The defendant argued that it was error to sentence him to two years incarceration "because section 23 of the Act of June 30, 1919, P.L. 678, 692, amended by the Act of June 14, 1923, P.L. 718, under which the sentence was imposed, was repealed, without a saving clause, by the Act of May 11, 1927, P.L. 886, which by its terms went into effect on January 1, 1928, four days after imposition of sentence." *Beattie, supra* at 411–412.

The defendant argued that the repeal of a penal statute precluded further prosecution for violations of that law committed before the repeal absent a savings clause. The *Beattie* Court acknowledged the general rule " 'that all proceedings which have not been determined by final judgment, are wiped out by a repeal of the act under which the prosecution for the offense took place[.]' " *Id.* at 412 (quoting *Scranton City v. Rose*, 60 Pa.Super. 458, 462 (1915)). It continued that a repealed statute "is considered as if it had never existed except as to matters and prosecutions past and closed[.]" *Id.*

However, the *Beattie* Court determined that the matter fell within the exception to the general rule. The Court opined,

> The prevailing view is that even where a statute is expressly repealed and all, or some, of its provisions are at the same time re-enacted, the re-enactment neutralizes the repeal and the provisions of the repealed act which are thus re-enacted continue in force without interruption so that all rights and liabilities that have accrued thereunder are preserved and may be enforced[.]

*Id.* It continued, stating, "(the principle) has been applied to criminal statutes so as to permit a conviction for an offense against the re-enacted old law, even where the re-enacting law undertook to repeal it; the re-enactment being construed a continuance." *Id.* at 413. The Court added,

> The question whether the statute was repealed is wholly one of legislative intent. It certainly cannot be seriously contended that when the legislature passed the Vehicle Code of 1927 it was intended that the offense of driving an automobile while under the influence of intoxicating liquor should cease to be a crime, or that pending prosecutions for that offense should fall.

*Id.* at 413–414. Since the new law codified the former acts and only reduced the punishment for the offense, "there was no interval when the operation of a motor vehicle by a person while under the influence of intoxicating liquor was not an indictable offense." *Id.* at 414. Therefore, the court upheld the finding of guilt.[9] The Commonwealth contends the same principles apply herein. Specifically, at all relevant times, it was a criminal act to fail to register as a sex offender, and the enact-

ment of § 4915.1 was a substantial re-enactment of the provisions of § 4915.

A similar result as *Beattie* was reached in *In re Dandridge, supra.* There, the Judicial Inquiry and Review Board charged the defendant, a Philadelphia County Court of Common Pleas judge, with violating the Pennsylvania Constitution and a Canon of Judicial Ethics by accepting $23,500 from the proceeds of a dinner held in his honor. The Judicial Inquiry and Review Board recommended that Judge Dandridge be privately admonished and provide the Commonwealth with an amount of money equal to that he received at the dinner.

In his appeal to the Supreme Court, Dandridge argued that the Canon of Judicial Ethics that he was charged with violating, Canon 32, and which was in place at the time of his conduct, had been repealed and superseded by the Code of Judicial Conduct. He maintained that, since the Code of Judicial Conduct did not include a savings clause, the allegation that he violated the Canon of Judicial Ethics should have been dismissed.

The *Dandridge* Court first rejected the position that Dandridge was only charged with violating Canon 32. It concluded that, although not cited, the allegations in the charge also implicated a separate canon. The Court opined, "[e]ven a criminal indictment that fails to include a statutory citation will stand." *Id.* at 887. The Court then concluded that, although the former canons had been repealed, the new Code of Judicial Conduct sanctioned the same conduct and Judge Dandridge could be disciplined. Based on these cases, the Commonwealth argues that Appellant's conduct violated Megan's Law II, Megan's Law III and SORNA.

---

**9.** The *Beattie* Court did hold that the defendant had to be resentenced to a lesser sentence based on the newer law.

In addition, the Commonwealth posits that the ruling in *Neiman* resulted in the repeal of Megan's Law II by Megan's Law III being rendered inoperative. *See* Commonwealth's brief at 9. In *Mazurek v. Farmers' Mut. Fire Ins. Co. of Jamestown*, 320 Pa. 33, 181 A. 570, 573 (1935), our Supreme Court explained, "a repealing clause expressly repealing a prior statute is itself ineffective where the substitute for the prior statute provided in the repealing statute is unconstitutional, and where it does not appear that the legislature would have enacted the repealing clause without providing a substitute for the act repealed[.]" *see also Commonwealth Dept. of Education v. First School*, 471 Pa. 471, 370 A.2d 702 (1977);

■ Simply put, an unconstitutional statute cannot repeal a former law and the prior statute remains in force. Accordingly, the Commonwealth argues that Megan's Law II was effective until the implementation of SORNA and that Appellant committed a first-degree felony violation of Megan's Law II.

■ Initially, we note that the Commonwealth's argument that Appellant was charged with violating 18 Pa.C.S. § 4915.1(a)(3) is factually misleading. Neither the docket sheet, nor the criminal complaint, nor the criminal information cites to that provision. Appellant is correct that the Commonwealth did not amend its criminal information to expressly cite to § 4915.1 after the *Neiman* decision and before his re-trial. Our Rules of Criminal Procedure provide, "The information shall contain the official or customary citation of the statute and section thereof, or other provision of law that the defendant is alleged therein to have violated; but the omission of or error in such citation shall not affect the validity or sufficiency of the information." Pa.R.Crim.P. 560(C). Thus, an incorrect citation in a criminal information is not necessarily dispositive. *See also Dandridge, supra* at 887 (providing similarly with respect to criminal indictments); *Commonwealth v. Grant*, 121 Pa.Super. 399, 183 A. 663, 666 (1936) ("an indictment is not defective because it does not refer to the act of assembly on which it was based."); *Commonwealth v. Campbell*, 116 Pa.Super. 180, 176 A. 246, 249 (1935) ("if the crime charged is substantially in the language of the act of assembly, as it was here, it is sufficient. The purpose of this act and the marked tendency of modern decisions is to accomplish substantial justice by ascertaining whether defendant is guilty or innocent, rather than to recognize the force of legal niceties and technicalities").

We do not dispute that Megan's Law III as enacted via Act 152 of 2004 is invalid. However, we cannot agree with Appellant that the legislature was required to re-enact § 4915(a) after the *Neiman* decision via Act 19 in order for the crime of failing to register to continue in existence. That is because it already enacted § 4915.1 in place of § 4915 by passing Act 111 of 2011.

■ As highlighted, the repeal of a statute defining a criminal offense by a statute that re-enacts in substance the original offense does not interrupt the operation of the older offense. *Beattie, supra.* Instantly, the General Assembly did not abolish the crime of failing to register. Instead, it replaced and substantially re-enacted that law via 18 Pa.C.S. § 4915.1. Therefore, the offense of failing to register as a sex offender continued and was at all times prohibited. Hence, any reliance on the statement in *Siebold, supra*, regarding unconstitutionally void laws is misplaced. While § 4915 was void at the time of Appellant's trial, having been replaced by a newer statute, the crime itself was never invalidated in its entirety. Indeed, § 4915.1 was passed before the *Neiman*

decision and, even considering § 4915 as void from the outset,[10] § 4915.1 re-enacted the failing to register law under Megan's Law II.

Phrased differently, failing to register as a sex offender was never decriminalized. However, this does not necessarily resolve this case in favor of the Commonwealth. Section 4915.1 is distinct from the original Megan's Law II crime of failing to register in an important respect. Megan's Law II initially provided a ten-day period to notify State Police of a change of address. Application of the original Megan's Law II, therefore, would mean that Appellant committed no violation. We add that SORNA currently mandates that offenders inform State Police of an address change within three business days. 42 Pa.C.S. § 9799.15(g)(2). Appellant registered his new address on April 6, 2009, after moving out of his former residence on April 1, 2009. April 4 and April 5, 2009, were Saturday and Sunday, respectively. Hence, Appellant did provide his change of address within three business days. In short, Appellant violated neither the original Megan's Law II nor SORNA by not reporting to State Police his change of address for three business days and five days total.

Nonetheless, in 2006, the General Assembly enacted legislation reducing the time in which an offender had to report a change in address. *See* Act 2006–178 (S.B. 944), P.L. 1567, § 7, ("Act 178"). Act 178 was separate and distinct from the unconstitutional Act 152 of 2004, and mandated that offenders no longer had ten days to inform State Police of a residence change, but forty-eight hours. The 2006 law took effect January 1, 2007. That law also altered the grading of failing to report in Megan's Law III. It must be remembered that the original Megan's Law III had reduced the grading of the failing to register offense in Megan's Law II. Act 178 amended 18 Pa.C.S. § 4915(b) and (c), and made Appellant's offense equal to a felony of the second degree. This was an increase in grading from Megan's Law III, but a decrease in grading from Megan's Law II.

Therefore, a question arises as to whether Act 178 should be applied as amending or repealing and re-enacting those portions of Megan's Law II that were affected by Act 178. If we read Act 178, intending to amend Megan's Law III, as actually amending Megan's Law II or constitutionally re-enacting various provision of Megan's Law III, then Appellant is guilty of failing to register.[11] We find that, in light

**10.** There are exceptions to the *Siebold* pronouncement that an unconstitutional law is void from the outset. That is, where there are actions taken in justifiable reliance upon a judicial ruling that the statute was constitutional at one point in time, the statute is not always considered a nullity and as if it never existed. *See* 46 Am.Jur.2d Constitutional Law § 196; *Heilig Estate*, 13 Pa. D. & C.3d 1, 8; *see also Lemon v. Kurtzman*, 411 U.S. 192, 199, 93 S.Ct. 1463, 36 L.Ed.2d 151 (1973) (limiting its decision in *Norton v. Shelby County*, 118 U.S. 425, 442, 6 S.Ct. 1121, 30 L.Ed. 178 (1886), which reiterated the constitutionally void *ab initio* doctrine espoused in *Siebold* by stating, "However appealing the logic of *Norton* may have been in the abstract,

its abandonment reflected our recognition that statutory or even judge-made rules of law are hard facts on which people must rely in making decisions and in shaping their conduct."); *see also* Thomas Raeburn White, Commentaries on the Constitution of Pennsylvania, 27–28 (1907) (discussing exceptions to unconstitutionally void *ab initio* doctrine).

**11.** We note that no *ex post facto* violation would occur herein because of this change since Appellant's conduct transpired after the amending legislation. In contrast, interpreting SORNA to amend the original version of Megan's Law II could result in an as applied *ex post facto* violation where a person failed to register within ten days but not three business

of our aforementioned discussion, Act 178 amended Megan's Law II and not Megan's Law III. Appellant's conviction for failing to register therefore remains sound.

In *Keystone State Tel. & Tel. Co. v. Ridley Park Borough*, 28 Pa.Super. 635, 642 (Pa.Super.1905), in addressing the argument that the unconstitutionally void *ab initio* doctrine precluded amendment to an unconstitutional statute, the Court opined, "An unconstitutional statute is not a law, but it is not strictly accurate to say that it is always and under all circumstances to be treated as if it never had been passed." The *Keystone State* Court continued,

> The appellate courts of some of the other states have held that an amended section of a statute takes the place of the original section, that the whole statute after the amendment has the same effect as if re-enacted with the amendment, and hence an unconstitutional statute may be amended into a constitutional one, so far as its future operation is concerned, by removing its objectionable provisions, or supplying others to conform it to the requirements of the constitution[.]

*Id.* at 643.

Quoting this case in his Commentaries on the Constitution of Pennsylvania, Professor Thomas Raeburn White posited, "The principle last expressed in this quotation is believed to be sound law, although not yet definitely approved in Pennsylvania." Thomas Raeburn White, Commentaries on the Constitution of Pennsylvania, 28 (1907). Citing Professor White, our Supreme Court subsequently adopted a

similar proposition. In *Commonwealth ex rel. Schnader v. Great American Indem. Co.*, 312 Pa. 183, 167 A. 793, 797–798 (1933), the High Court set forth:

> In the case of an amendatory statute, it is a matter of indifference whether or not the original statute was or was not unconstitutional: White on the Constitution of Penna., page 28; 6 R.C.L. 120, section 120. This must be so, since every word of the amended statute, including that quoted from the original statute, is the language of the legislature which passed the amended act in those words.

The *Schnader* Court added, "Strike down the former and the latter remains, under the authorities quoted, "proper as independent legislation[.]" *Id.* at 798. Act 178, therefore, remained as valid independent legislation, despite Act 152 being held unconstitutional. Thus, both Act 178 and Megan's Law II remained valid law until replaced by SORNA. We add that the legislature expressly provided in Act 178 that, "The General Assembly hereby declares its intention to enact versions of Jessica's Law and Megan's Law in this Commonwealth." Act 2006–178 (S.B. 944), P.L. 1567, § 7.[12]

More importantly, former § 42 Pa.C.S. § 9795.2(a)(2), amended by Act 178 to reduce the period in which an offender had to report a change of address, was part of Megan's Law II as well as Megan's Law III. Further, while 18 Pa.C.S. § 4915(a) was not enacted or amended by Act 178, this provision was in substantially similar form under Megan's Law II. *See* former 42

---

days. Thus, applying retroactively the registration requirements of SORNA in this matter as repealing and replacing the **original** Megan's Law II would be an unconstitutional *ex post facto* violation because it would punish conduct that was not criminal under that version of Megan's Law II.

**12.** Jessica's Law is a reference to mandatory minimum sentences for sex offenders and is named after Jessica Lunsford, a child who was abducted, sexually assaulted and then murdered in Florida by a man previously convicted of a sex offense.

Pa.C.S. § 9795.2(d)(2) ("An individual subject to registration under Section 9795.1(b)(1), (2), or (3), who fails to register with Pennsylvania State Police as required in this section commits a felony of the first degree[.]"); Act 2000–18 (S.B. 380), P.L. 74, § 3.[13] The penalty provision of Megan's Law II that was struck down by *Williams II*, relative to failing to register, can also be viewed as corrected by Act 178 via its passage of 18 Pa.C.S. § 4915(b) and (c). In sum, construing the original version of Megan's Law II and Act 178 together results in Appellant's felony of the second-degree conviction for failing to register as a sex offender being constitutionally and statutorily firm.

Judgment of sentence affirmed.

---

**13.** The original version of Megan's Law II did not specify a culpability of "knowingly" as did the legislature's adoption of 18 Pa.C.S. § 4915(a) in Megan's Law III. Nevertheless, 18 Pa.C.S. § 302(d) provides that when a culpability is not included in the law, an element "is established if a person acts intentionally, knowingly or recklessly with respect thereto." The criminal information in this case specified that Appellant knowingly failed to register. Hence, there is no issue with respect to a lack of notice of the elements of the crime charged that would have resulted in trial counsel being unable to pursue available defenses.